KATE REYNOLDS, Respondent, v. CATHERINE CLEARY, Appellant.

*Contract for the sale of real estate — what defects in the title will justify a vendee in refusing to accept it.*

The vendee in a contract to sell and convey lands is entitled to a marketable title, and one concerning which there is no probability of future litigation.

In an action brought by the vendee under a contract for the sale of real property to recover from the vendor the payment made on account of the purchase, and the damages resulting to the vendee from the vendor's inability to convey a good title to the premises, it appeared that a covenant running with the land, relative to the non-erection of buildings for noxious trades upon the premises, might still be in force, and that a mortgage affecting the premises had been improperly foreclosed, to which latter defect in the title the vendor offered no other defense than the statute of limitations:

*Held*, that the vendee was not bound to accept the title, and might recover the purchase-money paid and the expenses of searching the title.

APPEAL by the defendant Catherine Cleary from a judgment, entered, after a trial by the court at the New York Equity Term, in the office of the clerk of the city and county of New York on the 15th day of December, 1890, directing a sale of certain real estate which had been contracted to be sold and conveyed by the defendant to the plaintiff, the title to which was defective, and awarding the plaintiff $275 for damages and searching fees.

*George W. McAdam*, for the appellant.

*Richard O' Gorman*, for the respondent.

DANIELS, J.:

The action was brought upon a contract for the sale and conveyance of real estate, known as 527 West Forty-fifth street in the city of New York. By the contract the defendant covenanted to execute and deliver to the plaintiff " a proper deed containing a general warranty and the usual full covenants for the conveying and assuring to her, or them, the fee simple of the said premises, free from all incumbrance, except as aforesaid," which exception included a mortgage upon the property amounting to the sum of $5,000. A deed was tendered for the performance of the agreement, which was refused by the plaintiff. This refusal was placed

upon several grounds, including what was alleged to have been a defective foreclosure of a mortgage, through which a portion of the title to the property was acquired; and also concerning a covenant, contained in two deeds, through which the title passed, by which the grantees, in such deeds, were made to covenant with the grantor " That neither the said parties of the second part nor their heirs shall or will at any time hereafter erect or permit, upon any part of the lots of land above described, any slaughter-house, tallow chandlery, glue factory, bone factory, or factory for the boiling or grinding of bones, varnish factory, vitriol factory, distillery, brewery or factory for tanning or dressing hides or skins, or any noxious or dangerous trade or business ; and that in every conveyance of the said premises, or of any part thereof, by the said parties of the second part or their heirs, they shall insert or cause to be inserted a covenant on the part of their grantee or grantees, that the said grantee or grantees, or his or their heirs, will not erect or permit upon any part of the premises conveyed to him or them, any slaughter-house, tallow chandlery, glue factory, bone factory, or factory for the boiling or grinding of bones, varnish factory, vitriol factory, distillery, brewery or factory for tanning or dressing hides or skins, or any noxious or dangerous trade or business, and it is agreed that these covenants shall run with the land."

The court at the trial did not definitely pass upon the objection raised to the title arising upon this covenant. And it was made to appear in answer to the objection that the property in the vicinity of that which is now in controversy had been devoted to the carrying on and transaction of various descriptions of business, and not as residence property. And it may be, from the evidence in the case, that this covenant might be held to have become obsolete and inoperative. (*Trustees, etc.*, v. *Thacher*, 87 N. Y., 311.) But that was not so surely established as a matter of fact, as to exclude the probability of future litigation for the purpose of maintaining or contesting the continued force and validity of this covenant. The case, in this respect, differs from that of *Clement* v. *Burtis* (121 N. Y., 708), where the covenant related alone to what would probably be a nuisance upon the property, while the covenant in the present case included all such uses of the property as were inconsistent with private residences. And if it shall be continued and

maintained, it constituted an incumbrance upon this land. ( *Wetmore* v. *Bruce*, 118 N. Y., 319.)

The particular objection upon which it was held that the plaintiff was not bound to accept this title was, that the interest of Austin and James Steele, which they had acquired in the property, was not extinguished or conveyed to the purchaser by the judgment and sale in the foreclosure action. Neither of these persons was personally served with the summons in the foreclosure suit, but they were proceeded against by the publication of the summons under an order made in August, 1860, for that purpose. To entitle the plaintiff in the action to that order, under section 135 of the Code of Procedure, which was then the law, prescribing the practice, it was necessary that it should appear, from the affidavit, that the persons on whom the service was to be made could not, after due diligence, be found within the State. But the affidavit upon which the order of publication was made contained no reference or statement whatever on this subject. It was made wholly upon information, as loosely and unsatisfactory as it could possibly have been drawn, and was clearly insufficient to comply with this requirement of the statute. That was a means by which jurisdiction over the absent defendants was to be obtained, and the proceeding was clearly pointed out and prescribed by the statute. And as it was not complied with, jurisdiction over the subject was necessarily not obtained by the judge making the order of publication. As the law was then in force, it was an essential necessity that the affidavit should show that the summons could not be personally served upon either of these defendants in the exercise of due diligence observed for that purpose. But this affidavit wholly failed to make any reference whatever to that subject. A question of similar import was examined in the case of *Carlton* v. *Carlton* (85 N. Y., 313), where it was said that: "The court or judge to whom the application is made must be satisfied as to the sufficiency of the evidence that due diligence has been used to find the defendant within the State, and that after such diligence he cannot be found therein." (Id., 314.) In this case the affidavit was wholly silent on the subject of the exercise of this statutory diligence, and it entirely failed to present any evidence that any effort had been made to find or serve the summons upon either of these defendants. And *Peck* v. *Cook* (41 Barb., 549), is

an additional authority establishing the indispensable necessity of such proof before the order of publication could be obtained under this provision of the statute. And *Greenbaum* v. *Dwyer* (66 How., 266), follows the same construction.

The same section of the Code of Procedure also required that the order should direct a copy of the summons to be forthwith deposited in the post-office, directed to the person to be served at his place of residence, unless it appeared that it was unknown to the party making the application, or could not, with reasonable diligence, be ascertained by him. The order for publication of the summons in this foreclosure action contained no such direction. But it directed that the summons in the action be served upon the defendants Austin and James Steele, and their wives, by publishing the same once a week for twelve weeks, etc., " and at the same time depositing a summons and copy of the complaint in this action, addressed to the said defendants severally at their last known place of residence as herein-before mentioned, and paying the postage thereon." This direction was so far from being a compliance with the requirement of the law that it left the party at liberty to deposit the summons and copy of the complaint addressed to the defendants in the post-office at any time during which the publication progressed That publication was to be once a week for twelve weeks, and within the same time this deposit of the summons and complaint in the post-office was allowed to be made.

It has been urged that these defects in the foreclosure proceed-ings have been substantially avoided or removed by the subsequent possession of this property. And for that purpose it was shown that the land had been in the possession of Timothy Cleary, and that, before his possession, there had been erected and main-tained a blacksmith shop upon a part of the property, and that there were sheds standing upon its rear. But how much of the land was covered in this manner he was unable to say. But, according to his recollection, these buildings were upon the lot before 1872, and extending back twenty-six years prior to the trial, and the grantor of the premises to his wife put the present building upon the land in 1871. It was further shown by James Falon that he had a black-smith shop on the lot, and he purchased the property in September,

1864, and remained in the possession of it until it was conveyed to William Meikle, who was the grantor of the plaintiff.

The evidence upon this subject of possession was weak and indeterminate. It might be sufficient to induce a jury to conclude that the entire lot had been held adversely by these parties for a period exceeding twenty years. And so a jury would also be at liberty to find, as a matter of fact, that there had been no adverse holding of the entire lot during that period. The question would necessarily be one of fact, depending upon the testimony of witnesses having knowledge of the manner in which the premises had been occupied and used. It would, at the best, leave the title in a controverted condition, attended with the risk that these persons upon whom this service of the summons was made by publication would still be at liberty to redeem their interest in the property from the foreclosure and sale. And when that is the nature of the proceeding, a party entitled to such a conveyance, as it was covenanted the plaintiff should receive, is not bound legally to accept the title. (*Shriver* v. *Shriver*, 86 N. Y., 576, 584, 585 ; *Aldrich* v. *Bailey*, 28 N. Y. St. Rep., 571 ; *Fleming* v. *Burnham*, 100 N. Y., 1.)

The case in this respect is quite distinguishable from that of *Ottinger* v. *Strasburger* (33 Hun, 466), which was affirmed in 102 New York, 692. There the evidence was substantial, and to a reasonable degree certain, that the title had become firmly established by the possession which had been enjoyed and held under the different devises and deed. But in this action such was not the fact, for the evidence was loose and indecisive, leaving the title to this lot subject to a probability at least of future controversy and litigation. And such a title is not required to be accepted by the vendee in a contract for the conveyance of land with the covenants mentioned in this agreement. (*Vought* v. *Williams*, 120 N. Y., 253.)

The judgment rendered for the recovery of the amount paid by the plaintiff, and the expense of searching the title was authorized by the facts, and it should be affirmed, with costs.

VAN BRUNT, P. J., and LAMBERT, J., concurred.

Judgment affirmed, with costs.