HELEN W. BIGGS, Appellant, *v.* SEA GATE ASSOCIATION, Respondent.

Real property — easements — statements in prospectus of realty improvement company that purchasers of lots could connect with sewers and water systems — when company cannot cut off connections made by grantee of purchaser, who used premises for boarding house, without permission of company.

1. An improvement company, defendant's grantor, undertook the development of certain lands, and for that purpose laid out streets and installed sewer and water systems, and filed a map of the property in the office of the registrar of the county in which the land was situated. It published and circulated circulars, booklets and advertisements to attract purchasers, containing statements to the effect that complete systems of sewer and water and gas maihs had been constructed for which there was to be no assessment, and representing in effect to purchasers that they would have the right to connect their properties with said systems without any assessment for the cost thereof. Plaintiff's grantor bought a lot knowing of and relying upon these representations. *Held*, that representation that water and sewer systems had been completed, and purchasers of lots would not be assessed for the same, necessarily implied an agreement that such purchasers should have the right to make connections therewith, and the case is the same as though the connections had already been made.

2. After plaintiff had entered into a contract for the erection of a building on her lots, defendant, which had succeeded to the title of the improvement company, gave notice in substance that it was its purpose to prevent the erection of houses for boarding house, inn or hotel purposes. Plaintiff obtained a permit to connect with the sewer and water systems upon the representation that the house was to be used as a private house. Upon the erection of her house, plaintiff conducted the business of a boarding house. Thereafter defendant notified the plaintiff that it would cut off the connection of her house with its sewer and water supply pipes, and thereupon this suit was brought. *Held*, that plaintiff acquired the rights appurtenant to the premises possessed by her grantor, and had the right to make connections at convenient points with the existing systems and could not be deprived of those rights because she conducted a boarding house or by reason of the misrepresentation in procuring the defendant's consent.

*Biggs* v. *Sea Gate Assn.*, 152 App. Div. 918, reversed.

(Argued May 6, 1914; decided June 2, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 11, 1912, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter W. Irwin* for appellant. The plaintiff, by virtue of succeeding to the rights of James McAlley, acquired an absolute right to use the streets, sewers and water mains at Sea Gate, because the Norton Point Land Company represented such utilities as appurtenant to all lots sold, and thereby induced McAlley to become a purchaser. (*Tallmadge* v. *East River Bank*, 26 N. Y. 105; *E. L. Ins. Co.* v. *Bruman*, 148 N. Y. 661; *Silverman* v. *Uhrlaub*, 116 App. Div. 869; *Lampman* v. *Milks*, 21 N. Y. 505; *Smith* v. *Zeal*, 143 App. Div. 83; *Hay* v. *Snauth*, 36 App. Div. 617.)

*Charles J. McDermott* for respondent. Representations from which rights are implied also create reciprocal burdens. (*Lampman* v. *Milks*, 21 N. Y. 507; *Blackman* v. *Striker*, 142 N. Y. 561; *King* v. *H. R. R. Co.*, 210 N. Y. 467; *Wells* v. *Garbutt*, 132 N. Y. 430; *Butterworth* v. *Crawford*, 46 N. Y. 349; *Schaefer* v. *Blumenthal*, 169 N. Y. 227.) In maintaining in this community a boarding house of the size and character of this building, the plaintiff is violating the express covenants of her deeds. (*Sturges* v. *Bridgman*, L. R. [11 Ch. Div.] 852; *Hurlburt* v. *McKone*, 55 Conn. 31; *Campbell* v. *Seaman*, 63 N. Y. 568.) Plaintiff's rights, if any, being contractual in character, depending upon the license of the defendant association, being subject to reasonable regulations and having been obtained by false representations of a material fact, may be canceled and revoked. (*Adams* v. *Gillig*, 199 N. Y. 314, 322; *Haebler* v. *N. Y. P. Exchange*, 149 N. Y. 423; *Johansen* v. *Blume*, 53 App. Div. 529; *T. I. P.*

*Assn.* v. *Tucker,* 173 N. Y. 203; *Chautauqua Assembly* v. *Alling,* 46 Hun, 582; *Whitside* v. *Noyac Cottage Assn.,* 142 N. Y. 585.)

MILLER, J. This action was brought to enjoin the defendant from cutting off the connection of plaintiff's residence with its sewer and water pipes. The Appellate Division reversed on the law. A brief statement of some of the essential facts found by the trial court will conduce to a proper understanding of the question of law involved. In 1892 the Norton Point Land Company was incorporated. It acquired and undertook the development of the land on the western point of Coney Island, now known as Sea Gate. For that purpose it laid out streets and installed sewer and water systems. It filed in the office of the registrar of Kings county a map of the property. It published and circulated divers circulars, booklets and advertisements to attract purchasers, containing statements to the effect that complete systems of sewer and water and gas mains had been constructed for which there was to be no assessment, and representing in effect to purchasers that they would have the right to connect their properties with said systems without any assessment for the cost thereof. In 1897 one McAlley, the plaintiff's grantor, purchased a lot on Beach 50th street, knowing of and relying upon said statements and representations. The defendant was organized as a membership corporation on the 15th of July, 1899. Owners of lots within the territory originally owned by the Norton Point Land Company were entitled to membership. On the 26th of February, 1901, the said land company conveyed to the defendant among other things the ocean beach, about 100 lots of land and all the right, title and interest of the land company in and to the land in the streets shown on the map, filed as aforesaid, together with the improvements, subject "to any easements or rights now existing in respect to any of the same

and to an easement or easements in favor of any and all of the lands still remaining the property of the party of the first part [the grantor] and of any of the owners or occupants of any of such land at any time of the same character and extent as is appurtenant to like lands heretofore sold and conveyed by the party of the first part." On the 3rd day of June, 1901, said McAlley purchased another lot on Beach 50th street of the Norton Point Land Company. The deeds to McAlley contained covenants against nuisances. On the 22nd of December, 1908, the plaintiff purchased from the executor of McAlley the said lots thus acquired by him. On the 8th of January, 1909, a resolution was passed by the directors of the defendant association instructing its president to notify the members "that it is the purpose of the directors to refuse to consent to the building of houses at Sea Gate for boarding house purposes." Thereafter a circular letter was sent out stating among other things that "the directors had decided to withhold the consent to, and in all possible ways to prevent, the erection or leasing of any other or additional houses in Sea Gate for boarding house, lodging house, inn or hotel purposes." That circular was received by the plaintiff after February 1st, 1909, at which date she entered into a contract for the erection of a building on her lots. There were no sewer or water mains in Beach 50th street when the plaintiff purchased her property. A sewer outlet, however, had been laid within eight feet of the rear of said lots. On March 10th, 1909, the plaintiff's building contractor applied for and obtained a permit to connect with the sewer and water systems, and the plaintiff paid therefor the sum of $20. The sewer connection was made with the outlet at the rear of the lots, and a water pipe was laid in Beach 50th street by the defendant to connect with the main in Surf avenue sixty feet from the plaintiff's land. The said permits were issued by the defendant upon a representation made by the plaintiff's husband, who was

acting as her agent, that the house to be erected on the land was to be used as a private residence, and not as a boarding house. Upon the erection of her house, the plaintiff conducted therein the business of a boarding house. On the 25th of June, 1909, the defendant notified the plaintiff that it would cut off the connection of her house with its sewer and water supply pipes, and thereupon this suit was brought.

The defendant justifies its action upon the ground that the plaintiff obtained the permit to connect with the sewer and water systems upon the misrepresentation of her husband that the premises were not to be used for a boarding house, and, upon that theory, the Appellate Division reversed the Special Term. Boarding houses were conducted at Sea Gate apparently without objection until the adoption of the resolution by the directors of the defendant on the 8th of January, 1909. One of the pamphlets issued by the Norton Point Land Company contained this: " a number of boarding houses will be ready for occupancy next summer."

It is not seriously denied that the purchasers of lots, relying upon the printed advertisements and the map, acquired not only easements in the streets, the fee of which remained in the land company, but the right to connect with the sewer and water systems. A majority of the Appellate Division were of the opinion that the privilege applied only to the existing completed systems, and did not obligate the defendant or its predecessor, the Norton Point Land Company, to any extension. That view is based on the use of the past tense in the pamphlets and circulars in describing the improvements as already completed. But there can be no doubt that it was the purpose of the advertisements to give the purchasers to understand, and that they did understand, that they would have the right to connect with the sewer and water systems. In a sense each new connection would be an extension of the system. The

house connections would have to be made through land the fee of which remained in the land company. So far as the sewer was concerned, the plaintiff has made the connection with an existing outlet. It is of no concern to the defendant that that connection was made through premises now owned by other persons. So far as the water connection is concerned, the plaintiff certainly had the right to connect with the existing mains at the most convenient point. She acquired an easement in Beach 50th street not only for ingress and egress to and from her premises, but, if necessary, to lay a pipe to connect with the water main only a few feet away in Surf avenue. Had the house connections been laid prior to the sale of the lands by the land company there could be no doubt whatever that the grantees would have acquired not only the usual easements of light, air and access in the streets, but the right to maintain said connections, which rights and easements would have been appurtenant to the land conveyed and passed to each successive grantee. (*Lampman* v. *Milks*, 21 N. Y. 505; *Curtiss* v. *Ayrault*, 47 N. Y. 73; *Fritz* v. *Tompkins*, 168 N. Y. 524, 532.) The lots were sold with reference to a uniform plan of improvement, and the representation that water and sewer systems had been completed, and purchasers of lots would not be assessed for the same, necessarily implied an agreement that such purchasers should have the right to make connections, and the case is the same as though the connections had already been made, and is in principle analogous to cases in which it is held that reciprocal rights and burdens are created by the sale of lots with reference to a map showing streets, or to a uniform plan of improvement. (*Tallmadge* v. *East River Bank*, 26 N. Y. 105; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Lord* v. *Atkins*, 138 N. Y. 184; *Thousand Island Park Association* v. *Tucker*, 173 N. Y. 203; *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of the Mayor, etc., of New York*, Id. 581.)

The plaintiff acquired the rights appurtenant to the premises possessed by her grantor, and, as she at least had the right to make connections at convenient points with the existing systems, the learned judge at Special Term was right in holding that she could not be deprived of those rights because of the misrepresentation of her husband in procuring the defendant's consent.

It is urged that the plaintiff's premises were originally a part of the beach reservation and that the prior grantees of other lots thereby acquired easements in said premises. It will be time enough to consider that question when the persons claiming such rights assert them. It is also urged that in maintaining a boarding house the plaintiff is violating the express covenants of her deeds. In view of the findings a boarding house business could not be classed as an "offensive, noxious or dangerous trade or business," even though such business may now be objectionable to the members of the defendant association. If it was intended to restrict the premises conveyed to strictly private residences or to prohibit the boarding house business, covenants to that effect should have been inserted in the deeds. The plaintiff did not lose the right to conduct a boarding house by becoming a member of the defendant association, and it is unnecessary to determine whether the acts of the defendant's officers were *ultra vires.*

The order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs to appellant in all courts.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, COLLIN, CUDDEBACK and CARDOZO, JJ., concur.

Order reversed, etc.