(164 App. Div. 430)

### HEYMAN et al. v. BIGGS et al.

(Supreme Court, Appellate Division, Second Department.   November 27, 1914.)

EASEMENTS (§ 42*)—RIGHT OF ACCESS—PURCHASERS OF PROPERTY—EXTENT OF USE—"ACCESS TO AN UNDERGROUND SEWER."

An association, having the right to maintain a sewer system, necessarily including an outlet, was granted certain easements, including the pipes forming part of any system, passing through any land, not hereby conveyed and the right of access thereto over the said lands. *Held*, that "access to an underground sewer" meant more than a right to open the surface to make repairs, and implied the right of connection by branches, so that when such association laid a main outlet sewer within land thereafter conveyed to plaintiff, it was subject to access and connections from adjacent lots, if so permitted by the association's management.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 97; Dec. Dig. § 42.*]

Appeal from Special Term, Kings County.

Suit in equity by Jennie Heyman and another against Helen W. Biggs and another, for the removal of a sewer pipe on plaintiff's land and for other relief. From a judgment dismissing the complaint on the merits, plaintiffs appeal. Affirmed.

See, also, 211 N. Y. 482, 105 N. E. 664.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

William P. Pickett, of Brooklyn, for appellants.

Walter W. Irwin, of New York City, for respondent Biggs.

PUTNAM, J.  The controversy between Mrs. Biggs and the Sea Gate Association resulted in finally enjoining the association from cutting off her connection with the sewer and water supply systems of Sea Gate.  211 N. Y. 482, 105 N. E. 664.  As there were no mains on Beach Fiftieth street, her sewer connection had been made in 1909 with a sewer outlet at the rear of Mrs. Biggs' lot.  Judge Miller observed:

"It is of no concern to the defendant that that connection was made through premises now owned by other persons."  211 N. Y. 487, 105 N. E. 666.

On September 12, 1911, after the Special Term had decided the original suit in favor of Mrs. Biggs, the present plaintiffs, as owners of these lots, brought suit for removal of this pipe, which entered their land to form a connection with this main outlet sewer.  Before 1901 the main sewer had discharged under an old dock at the northeast side of Sea Gate.  In that year, however, this old sewer was lifted, and the present outlet, a 16-inch main, was run through the association's unsold lands at a depth of eight feet, which work was completed in May, 1901.  In 1906 the Sea Gate Association conveyed this land, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which this outlet sewer ran, to the plaintiffs. In the present suit plaintiffs do not ask relief against the main sewer outlet itself, but only to have removed the 6-inch branch pipe, which, under the direction of the superintendent of the Sea Gate Association, had been run from the rear of the Biggs land, a distance of 6 feet 8¾ inches into plaintiff's lot, where it tapped the sewer outlet.

The point raised by plaintiffs is narrow: Had the association the right to run lateral connections into this outlet from adjoining lot owners? Or must such sewer branches run exclusively under streets? The Sea Gate Association and its members had not only a general right to have and to maintain a sewer system (which necessarily includes a sewer outlet), but in its deed from the Norton Point Land Company of January 1, 1901, had been conveyed certain easements—

"including the sewer pipes and all other pipes forming part of any system, passing under or through any land of party of the first part not herein and hereby conveyed *and the right of access thereto over the said lands* and to have sewage and surface water discharged through present outlets until suitable substitutes therefor shall be provided."

Such a grant is to be construed strongly against the grantor. Access to an underground sewer means more than a right to open the surface so as to make repairs. It is a right to connect, if necessary, by branches—the only way sewerage can have permanent access for its passage therein. When, therefore, the Sea Gate Association laid the main outlet sewer within this lot, it did so for a general purpose, not for the convenience merely of certain residents back along the line, but for the contiguous lot owners.

Whether it was expedient to let them tap this main sewer outlet is a question of control and management of the sewerage system, as the right to maintain the sewer included branch connections and the right to say how and where they should be made. No sufficient ground appears to review and reverse this act of management and control over this sewer system.

In the prior suit, the question was what the plaintiff Biggs could compel from the association. The case at bar turns on what the servient tenement can do in resisting an exercise of rights by the dominant tenement, which rights are plainly incidental to a sewer system. Can it be said that a sewer crossing private lands, therefore, forbids branches and access from adjacent lots? Mrs. Biggs might not compel this connection (especially if one had been proffered through a street trunk sewer), but it is quite different to hold that the grantee from the Norton Point Land Company, exercising its power by its superintendent, had not the right to make such a connection. Sewer rights in such a residential community are not to be deemed exclusive. Sanitary considerations favor the contiguous lot owners, who, often by reason of such adjacent situations, are held for costly assessments. Such rights, I think, extend into the trunk sewer, if it is designed for a general outlet, whether the pipe be under a street or it chance to cross private property. An intent to grant such rights can fairly be imputed to an association that locates a sewer under its vacant unsold land, instead of beneath a street. At least the servient estate, deriving title from the

association which laid this sewer, must set up more than the fact of its title to the lot, in order to defeat such an easement necessary to the adjacent lot owner's health and convenience.

I advise, therefore, an affirmance, with costs. All concur.