EDWARD H. MOUBRAY, Respondent, *v.* G. & M. IMPROVE-
MENT COMPANY, Appellant.

Second Department, June 22, 1917.

**Real property — restrictive covenant construed — when small retail stores not dangerous, noxious or offensive to neighboring inhabitants — injunction.**

A restrictive covenant, which provides that neither the purchaser nor her heirs or assigns will ever premit to " be erected or carried on or established in any manner whatever any slaughter house, tallow chandlery, smith

Second Department, June, 1917. [Vol. 178.

shop, furnace foundry, nail or other factory or any manufactory for making starch, glue, varnish, vitriol, oil or gas or for tanning, dressing, repairing or keeping skins, hides or leather, or any distillery, brewery or sugar bakery, lime kiln, coal yard, railway or other stable or depot or car house or any manufactory, trade, business or calling, which may be in anywise dangerous, noxious or offensive to the neighboring inhabitants," does not prohibit the construction of several small retail stores with dwelling apartments above, upon the ground that they are " noxious or offensive " so as to warrant the court in enjoining their completion. The meaning of such a covenant is a question of law and no business is " dangerous, noxious or offensive " unless it is so in the same manner that the prohibited trades are.

APPEAL by the defendant, G. & M. Improvement Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 16th day of June, 1916, upon the decision of the court after a trial at the Kings County Special Term.

The judgment enjoined the completion of certain buildings in Underhill avenue on the ground that they were erected in violation of a restrictive covenant and directed the removal of the part thereof actually constructed.

*Lynn C. Norris* [*Edward M. Perry* with him on the brief], for the appellant.

*Alfred G. Reeves* [*Alexander S. Rowland* and *William P. Dalton* with him on the brief], for the respondent.

BLACKMAR, J.:

The plaintiff has obtained a judgment enjoining the defendant from completing the construction of certain buildings on Underhill avenue, designed to be used as retail stores, and directing it to forthwith remove them. The judgment is based on a finding that the erection of such buildings violates a restrictive covenant which reads as follows: " And the said party of the second part for herself, her heirs and assigns doth hereby covenant to and with the said City of Brooklyn, its successors or assigns that neither the said party of the second part nor her heirs or assigns will ever permit any building at any time to be erected or remain on said lot within five feet of Underhill Avenue, Butler Street, nor Butler Place respectively, nor unless it be constructed of brick, stone or iron and at least thirty feet high from side-

walk to cornice with metallic or slate roof, nor shall there at any time be erected or carried on or established in any manner whatever any slaughter house, tallow chandlery, smith shop, furnace foundry, nail or other factory or any manufactory for making starch, glue, varnish, vitriol, oil or gas or for tanning, dressing, repairing or keeping skins, hides or leather, or any distillery, brewery or sugar bakery, lime kiln, coal yard, railway or other stable or depot or car house or any manufactory, trade, business or calling, which may be in anywise dangerous, noxious or offensive to the neighboring inhabitants."

When the action was tried the buildings were incomplete; but their intended use was plainly indicated by the plans filed,. and it is conceded that they were designed to be and would be used as retail stores with dwelling apartments above. It is not contended that the buildings or the use to which they were to be put fell within the class of structures or uses prohibited by express naming; but it was claimed by the plaintiff and found by the court that they were being built in violation of the concluding clause of the restrictive covenant, in that they were in some wise dangerous, noxious or offensive to the neighboring inhabitants. There might be a somewhat arbitrary classification of different kinds of business as dangerous or not to neighboring inhabitants, but in any such classification a small retail store would hardly fall. The word " noxious," whose derivation and use suggest that which causes or tends to cause injury, especially to health or morals, could not be properly applied to a small retail store.

It is obvious that if the covenant were confined to prohibiting any manufacturing business or calling described by the adjective " offensive," it would be too indefinite and uncertain for practical enforcement. Individual taste determines what is offensive, and the saying, *de gustibus non est disputandum*, might almost rank as a legal maxim. The adjective has direct relation to the person whose tastes are consulted, and a delicate, supersensitive organization might take deep offense from that which would be a matter of indifference to one of coarser fibre.

But, fortunately, the covenant contains more than these adjectives. It specifies a number of factories and businesses which are prohibited; and then, because there may be others

unenumerated which would after the same manner affect the neighboring inhabitants, it contains a general clause in which the adjectives are used. It specifies kinds of business which grossly offend the senses of smell and hearing, and others, like railway depots or car barns, which not only offend these senses but introduce a peculiar element of danger in the use of the streets. The general clause is meant to prohibit other kinds of business which are dangerous, noxious or offensive in the same manner as those specified are. This is the doctrine *noscitur a sociis.* And there is no more useful canon of interpretation. The meaning of this covenant is purely a question of law; and no business is dangerous, noxious or offensive unless it is so in the same manner that the prohibited trades are. But a retail store is neither dangerous to the neighboring inhabitants, as for instance a railway depot or car house, nor is it noxious as a manufactory for making vitriol, oil or gas, or offensive as a slaughterhouse, tallow chandlery, furnace foundry, nail or other factory; and so the comparison might be carried on with all the prohibited industries. The respondent treats the question very gingerly, and suggests that the doctrine *noscitur a sociis* is satisfied by comparing a retail store, as for instance grocery store or drug store, with a manufactory for tanning, dressing, repairing or keeping skins, hides or leather, italicizing the word " keeping." Probably the most common use of land in a large city, next after dwellings and apartments, is for the erection of retail stores, and if it had been intended to forbid such use, stores would have been prohibited, or the use confined to dwellings.

We do not think that a small retail store, or nine of them, is forbidden by the covenant in question, and this view seems to be in accord with the authorities. We cite a few cases illustrating the method used by the courts in interpreting covenants restricting the use of land: *Biggs* v. *Sea Gate Association* (211 N. Y. 482); *Rowland* v. *Miller* (139 id. 93); *Kitching* v. *Brown* (180 id. 414); *Tobey* v. *Moore* (130 Mass. 448). The cases cited by the respondent, *i. e.,* *Reynolds* v. *Cleary* (61 Hun, 590); *Goodrich* v. *Pratt* (114 App. Div. 771); *Simons* v. *Mutual Construction Co.* (132 id. 719); *Dieterlen* v. *Miller* (114 id. 40), are all cases which involved the question whether covenants similar to the one under

consideration rendered the title unmarketable. These are not precedents controlling the question involved in this case. One purchasing real property should not be subjected to the reasonable probability of being involved in a law suit over the meaning and force of a covenant. Uncertainty destroys marketability; but an injunction cannot be based on an uncertainty.

It was pressed upon us on the argument that the judgment rested on findings of fact that the stores were in some wise dangerous, noxious or offensive to the neighboring inhabitants, and that such finding rested securely on the evidence of such inhabitants, who surely knew what was dangerous, noxious or offensive to them. The argument fails to consider that the duty rests on the court, and not on the neighboring inhabitants, to interpret the meaning of these adjectives. Neither the evidence nor the findings of fact, other than those involving conclusions of law, support the conclusion that these stores violate the covenant, or are in any wise dangerous, noxious or offensive to the neighboring inhabitants within the meaning of these words properly defined according to their relation to the covenant as a whole.

The judgment is reversed, with costs; the 20th, 26th, 27th, 28th, 29th, 31st, 33d, 34th, 35th, 37th, 38th, the last sentence in the 46th, and the 49th findings of fact, and the 1st, 2d, 3d, 4th, 5th, 6th, 8th and 9th conclusions of law contained in the decision are reversed and disallowed; and the 18th, 32d, 33d, 34th, 37th and 38th findings of fact, and the 3d, 4th, 5th, 6th and 7th conclusions of law proposed by defendant are found, and judgment directed for the defendant dismissing the complaint on the merits, with costs.

JENKS, P. J., THOMAS, STAPLETON and RICH, JJ., concurred.

Judgment reversed, with costs; the 20th, 26th, 27th, 28th, 29th, 31st, 33d, 34th, 35th, 37th, 38th, the last sentence in the 46th, and the 49th findings of fact, and the 1st, 2d, 3d, 4th, 5th, 6th, 8th and 9th conclusions of law contained in the decision reversed and disallowed; and the 18th, 32d, 33d, 34th, 37th and 38th findings of fact, and the 3d, 4th, 5th, 6th and 7th conclusions of law proposed by defendant, found, and judgment directed for the defendant dismissing the complaint on the merits, with costs.