JENNIE HEYMAN et al., Appellants, *v.* HELEN W. BIGGS, Defendant, and THE SEA GATE ASSOCIATION, Respondent.

**Real property — easements — equity — action to restrain defendants, owners of adjacent lots, from trespassing upon land of plaintiffs for the purpose of connecting sewer pipes — when right of access to sewer mains, without express grant of easement over plaintiffs' lands, conveyed to defendants right to make sewer connections only over streets laid out by their grantor.**

1. An action in equity will lie to restrain the maintenance of an easement when such maintenance is continuous and an action at law relating thereto will be inadequate.

2. Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate: *First,* that there has been a separation of the title; *second,* that before the separation took place, the use, which it is claimed gives rise to the easement, has been so long continued and so obvious or manifest as to show that it was meant to be permanent; and *third,* that the easement is necessary to the beneficial enjoyment of the land granted or retained.

3. To create an easement by implication on the ground of necessity the necessity must exist in fact and not as a mere convenience. In this case, the unity of ownership has been severed, but the use which gives rise to the easement, if at all, did not exist prior to the severance of the unity of ownership and no necessity for the beneficial enjoyment of the land granted or retained exists or ever has existed.

4. The word "appurtenant" can properly be used to convey an easement already existing and apparent in connection with property conveyed, but it is not sufficient to evidence a purpose of creating an easement when none existed prior to the time of the conveyance.

5. Where a land improvement company, which had divided a tract of land into building lots, laid out streets and installed a water and sewage system, conveyed to defendants, or their predecessors in title, certain lots with the right to use the improvements made by the company, including sewers, streets, water and other public utilities, with the easements and rights now existing and appurtenant thereto, but without any express grant of any easement or right of access upon or over adjacent lots, previously and afterward conveyed to plaintiffs and to others, for the purpose of making connections with any part of the sewage system, the right of defendants to connect with the sewers is confined to making the connection in or through the streets laid out by the company and referred to in the deeds to defendants, and, hence, defendants have no right, without the consent of the plaintiffs, owners of adjacent lots, to enter upon their lands for the purpose of making lateral connections with a sewer pipe constituting one of the outlets to the sewer system. Defendants have the undisputed right of access over a street, fronting on their lots, to connect with the main sewer in an avenue intersecting such street, and this right eliminates any question of an implied right by necessity on the part of the defendants over the plaintiffs' lot. (*Biggs* v. *Sea Gate Association*, 211 N. Y. 482, distinguished.)

*Heyman* v. *Biggs*, 164 App. Div. 430, reversed.

(Argued February 11, 1918; decided March 12, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 3, 1914, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The action was brought to restrain the defendants from maintaining a sewer pipe and connections on the lands of the plaintiffs. The defendant Biggs has died since the appeal herein was taken, but the opinion for convenience of statement has not taken that fact into consideration. The facts, so far as material, are stated in the opinion.

*William P. Pickett* and *Maurice Marks* for appellants. The appellants have fully established the facts necessary to entitle them to equitable relief unless the respondents

can justify the invasion of appellants' real property as
an exercise of legal right. (*Wheelock* v. *Noonan*, 108
N. Y. 179; *Hahl* v. *Sugo*, 169 N. Y. 117.) An easement
can be acquired in but three ways, by prescription; by
grant; and by implication arising out of a grant or cir-
cumstances equivalent to a grant. (2 Washb. on Real
Prop. [4th ed.] 303; Rice on Real Prop. chap. 12;
*Wiseman* v. *Lucksinger*, 84 N. Y. 31; *White* v. *Manhattan
Railway Co.*, 139 N. Y. 19.) Upon the evidence in this
case it does not appear that there is in existence any
easement of any kind over appellants' land. (14 Cyclo-
pedia of Law & Practice, 1168; *Lampman* v. *Milks*, 21
N. Y. 505; *Butterworth* v. *Crawford*, 46 N. Y. 349;
*Simmons* v. *Cloonan*, 81 N. Y. 557; *Root* v. *Wadhams*,
107 N. Y. 384; *Treadwell* v. *Inslee*, 120 N. Y. 465; *Matter
of City of New York* (*West 177th Street*), 135 App. Div.
520; *Curtis* v. *Ayrault*, 47 N. Y. 73.) No facts estab-
lishing an easement of drainage have been shown herein.
(*Hill* v. *Bernheimer*, 78 Misc. Rep. 472.)

No appearance for respondent.

CHASE, J. In 1892 the Norton Point Land Company
was organized as a corporation for the general purpose
of purchasing, selling and improving real property.
Between the years 1892 and 1897 it became seized and
possessed of a large tract of land at Sea Gate on Coney
Island. It caused the same to be surveyed, platted
and blocked for the purpose of selling and disposing of
the same. In 1896 it caused a map of said property to
be made and it was filed in the office of the register of
the county of Kings on the 16th day of June, 1897. The
court at Special Term found: "*Fourth.* That for the
purpose of making the said property at Sea Gate more
valuable and more easily sold the Norton Point Land
Company laid out streets therein, and in such streets

installed prior to the year 1897 sewer pipes so as to form a complete system by which the sewage from the houses to be built therein might be disposed of and also installed in said streets prior to the year 1897 water pipes so as to form a complete system by which the houses to be built therein might be supplied with water."

After making and filing said map the land company caused to be published and distributed numerous circulars, booklets, advertisements and printed matter relative to its said property. The court found:

" *Seventh.* That in the said circulars and advertisements the said Norton Point Land Company stated and represented that there was at Sea Gate a complete system of sewer, water and gas mains for which there would be no assessment and that Sea Gate was a fully finished property and that the right to use the improvements introduced including sewers, macadamized roads, water, gas, and electricity passed with no assessment to purchasers."

Included in the lands so acquired by said company was the lot afterward purchased by the plaintiffs and the lots afterwards purchased by the defendant Biggs herein mentioned. On October 20, 1897, the land company sold to James McAlley three lots of land known as numbers 19, 20 and 21 in block 17 as shown on said map.

The land company gave to McAlley a warranty deed of said lots " Together with the appurtenances and all the estate and rights of the said party of the first part in and to the said premises." In said deed there are certain covenants and reservations relating to the use of said lots that are immaterial in the decision of this appeal. In 1899 the Sea Gate Association was organized under the Membership Corporations Law of this state, among other things " To provide generally for the care, protection and maintenance of the property at Sea Gate

of its members and to promote social intercourse among its members and to ends aforesaid to acquire, take, hold and dispose of such property real and personal as the purposes of the association may require subject to such limitations as may be prescribed by law."

On the 26th day of February, 1901, by deed dated January 1, 1901, the land company sold to the Sea Gate Association " The ocean beach at Sea Gate together with riparian rights, dock, gate entrance, stable and bath house and about one hundred lots of land." The deed included Beach Fiftieth street and Surf avenue and the ocean front known as the Beach Reservation. By the deed the land company granted and released to the association the real property therein described bounded by certain streets " together with all the right, title and interest of party of the first part of, in and to all improvements made in, under and upon any of the said streets by party of the first part, including the pavements, sidewalks, gutters, lamps, trees, water mains or pipes, sewers, catch basins and connections, gas mains, pipes and connections, conduits, subways, poles and wires thereon, including the sewer pipes and all other pipes forming part of any system passing under or through any land of party of the first part not herein and hereby conveyed and the right of access thereto over the said lands, and to have the sewerage and surface water discharged through present outlet until suitable substitutes therefor shall be provided; franchises, rights, privileges and easements and the rights of the party of the first part to grant such franchises, rights, privileges or easements under, upon or in relation to the streets above enumerated subject, however, to any easements or rights now existing in respect to any of the same and to an easement or easements in favor of any and all of the lands still remaining the property of the party of the first part, and of any of the owners or occupants of any

of such land at any time of the same character and extent as is appurtenant to like lands heretofore sold and conveyed by the party of the first part."

Such deed to the association did not include the lot subsequently sold to the plaintiffs or the lot subsequently sold to McAlley, and thereafter acquired by the defendant Biggs. Among the sewers constructed in the streets of Sea Gate on or before the year 1897 was one in Surf avenue, which had its outlet to the ocean at a point some distance northerly of the lands of plaintiffs and the defendant Biggs. In the year 1901 and prior to June 1 of that year the land company made an outlet for the Surf avenue sewer over lot No. 1, as laid down on said map and the lands beyond the same to the ocean. The change in the place of outlet of the Surf avenue sewer did not in the slightest respect affect the practicability of obtaining access to that sewer from the lots fronting on Beach Fiftieth street through such street. Thereafter, and on June 3, 1901, the land company sold to said McAlley another lot adjoining those previously purchased by him known as lot No. L, in block 17. This lot was sold and conveyed by a warranty deed similar to the one previously given to him. On November 14, 1906, the land company conveyed to the plaintiffs said lot No. 1, by a similar deed. Lot No. 1 fronts on Surf avenue and extends westerly to Ocean View avenue. At a point less than one hundred feet southerly from said lot No. 1 is a street about one hundred feet long running at right angles from Surf avenue known as Beach Fiftieth street. The lands purchased by McAlley adjoin the beach reservation and face Beach Fiftieth street and abut said lot No. 1. While there are sewer, water and gas pipes in Surf avenue they have not been placed in Beach Fiftieth street. Each of said pipes, however, can be reached from the lands purchased by McAlley by a sixty-foot extension on Beach Fiftieth street from Surf

avenue and the sewer can also be reached by a few feet of excavation through Ocean View avenue which abuts the plaintiffs' lot and corners on the McAlley lots. No building was erected on the plaintiffs' or the McAlley lots for several years. Prior to 1908 McAlley died and his executors sold the four lots owned by him at the time of his death to the defendant Biggs. She became a member of the Sea Gate Association and at once erected a large building on her lots. The line of her lots is about eight feet from the sewer over and through lot No. 1 of the plaintiffs. She obtained water for her house by extending the water pipe from Surf avenue through Beach Fiftieth street to her property but as the cheapest method of reaching a sewer she ran her house sewer without the knowledge or consent of the plaintiffs across about eight feet of plaintiffs' land to and connected the same with the sewer pipe that runs over the plaintiffs' lot from Surf avenue to the ocean.

A controversy arose between the association and Biggs over the use of her building as a boarding house, the detail of which is now unimportant. The association threatened to cut off the water and sewer connection to her house if she did not cease using the same as a boarding house. That threat resulted in an action by her against the association. (*Biggs* v. *Sea Gate Association*, 152 App. Div. 918; 211 N. Y. 482.) The action in which this appeal is taken was brought by the plaintiffs to restrain the defendants from maintaining the sewer over the about eight feet of their land between the land of Biggs and the sewer on plaintiffs' lot mentioned. We think that they are entitled to the relief demanded.

The right of the plaintiffs to the relief demanded involves the alleged right of the defendant Biggs to use the plaintiffs' land through which to lay and maintain a sewer pipe from her lands to the sewer pipe maintained

by the association from Surf avenue through the plaintiffs' lot and other lands to the ocean. If such a right exists it must arise by prescription or by express or implied grant. (Rice on Real Property, 441; 9 Ruling Case Law, 745.) It cannot have been granted by parol. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31.) "An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing." (Real Property Law [Cons. Laws, ch. 50], § 242; Laws of 1909, chap. 52.)

The defendant Biggs has no express grant of such a right or easement and no such right or easement was reserved in the grant to the plaintiffs. No such right or easement can have arisen by prescription. It is said in 9 Ruling Case Law, 757, that "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; *first*, a separation of the title; *second*, that before the separation takes place, the use, which gives rise to the easement, shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, *third*, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained."

In this case the unity of ownership has been severed, but the use which gives rise to the easement, if at all, did not exist prior to the severance of the unity of ownership and no necessity for the beneficial enjoyment of the land granted or retained exists or ever has existed.

To create an easement by implication on the grounds

of necessity the necessity must exist in fact and not as a mere convenience. (*Wells* v. *Garbutt*, 132 N. Y. 430; *Bauman* v. *Wagner*, 146 App. Div. 195; *Ogden* v. *Jennings*, 62 N. Y. 526, 531; *Brakely* v. *Sharp*, 9 N. J. Eq. 9.)

The defendant Biggs is not entitled to an easement over the plaintiffs' land by reason of anything that occurred through the general advertisement of the property by the land company. As we have already seen from the findings quoted, the advertisement simply stated and represented that there was at Sea Gate a complete system of sewer, water and gas mains for which there would be no assessments. If the representation was untrue it would not create an easement by implication or otherwise, but it was true so far as appears except perhaps to the extent that the association had failed to extend the sewer and water mains a few feet into Beach Fiftieth street.

No right was reserved for the benefit of lands previously conveyed by the land company by reason of the provisions hereinbefore quoted from the deed given by the land company to the association. That deed conveyed the right, title and interest of the land company in and to the improvements in the streets of Sea Gate and in and to all pipes forming a part of the public utilities both in the streets and under or through the lands then belonging to the land company and a "right of access thereto over the said lands." The right of access thereto clearly has reference to access by the association for purposes connected with the ownership of the pipes. There is nothing in the deed from the land company to the association conveying a general right of access to any lot owner over lands not conveyed to the association for the purpose of lateral connections with a sewer pipe constituting a part of the sewage system of Sea Gate. Such a right if it exists at all

would inure to the benefit of all lots conveyed by similar grant and under similar circumstances. It would create such an intolerable burden that the deed to the association should not be construed to include such right unless the intention of the parties thereto to have it so construed is clear. No such construction is necessary or reasonable. There is nothing in such deed, it seems to us, on which to base a right to maintain the sewer from the lands of defendant Biggs over the plaintiffs' land. The right to connect with the sewer, water and gas systems of Sea Gate is not disputed, but by any fair construction of the deed such right is confined to making the connection in or through the streets owned by the association.

A claim that an easement is included as an " appurtenant " to the lands conveyed to McAlley is completely answered by the fact that there was no visible or apparent easement from the McAlley lots to the lot now owned by the plaintiffs when McAlley took his deeds.

The word " appurtenant " can properly be used to convey an easement already existing and apparent in connection with property conveyed but it is not sufficient to evidence a purpose of creating an easement when none existed prior to the time of the conveyance. (*Parsons* v. *Johnson*, 68 N. Y. 62.)

The defendant Biggs, as the owner of the lots conveyed to McAlley, was entitled to the use of the public utilities of Sea Gate, and also to the use of the streets thereof to enable her to enjoy such utilities. Such right can doubtless be enforced against the association. It is needless at this time to discuss the rights of the defendant Biggs as against the land company or the association.

Right of access by the owners of lots fronting on Beach Fiftieth street over such street to connect with the sewer, water and gas mains in Surf avenue cannot be disputed by the association. It apparently is not disputed as it

was admitted by an officer of the land company and of the association when he was a witness on the trial of this action. Any question relating to the expense of placing the sewer a few feet in Beach Fiftieth street or whether the same should be borne by the owner of the lots adjoining the street or by the association is not now material. The right of sewage over Beach Fiftieth street eliminates all question of an implied right by necessity on the part of the defendants over the plaintiffs' lot. It appears that the association connected the sewer from the Biggs house with the sewer on the plaintiffs' lot running from Surf avenue to the ocean and that it was paid therefor the sum of twenty dollars. It does not, however, appear that the association had any right or authority upon the plaintiffs' lot other than to maintain the sewer from Surf avenue and to enter upon the lot for the care and repair of such sewer.

An action in equity will lie to restrain the maintenance of an easement when such maintenance is continuous and an action at law relating thereto will be inadequate. (*Wheelock* v. *Noonan,* 108 N. Y. 179.)

There is nothing in the opinion of this court in *Biggs* v. *Sea Gate Association* (*supra*) affecting the plaintiffs' right to maintain this action. That action was decided upon the facts then presented, expressly leaving the rights of persons not parties to that action undetermined.

We do not think that the findings of the Special Term sustain the conclusions of law or the judgment entered upon such findings. It appears from such findings that the defendants trespassed upon the plaintiffs' land and that the prayer of their complaint should hve been granted.

The judgment should be reversed and judgment granted in accordance with the opinion of CHASE, J., with costs in all courts against the defendant, The Sea Gate Association.

HOGAN, J. (dissenting). I am unable to distinguish the present case from the case of *Biggs* v. *Sea Gate Association,* decided by this court by a unanimous approval of the opinion of Judge MILLER (211 N. Y. 482). That action was brought by the defendant here, Biggs, to enjoin the Sea Gate Association from cutting off the connection of the Biggs property with its sewer and water pipes. Biggs succeeded in the action at Special Term. The judgment secured by her was reversed by the Appellate Division. We reversed the order of the Appellate Division and affirmed the judgment of the Special Term. In the opinion in that case it was said that a brief statement of some of the essential facts found by the trial court (which we sustained) will conduce to a proper understanding of the question of law involved, and thereupon the facts narrated embraced the substance of about twenty of the findings of fact found by the trial court in the present case, which in connection with the additional facts found in the present case unanimously affirmed by the Appellate Division sustain the right of Biggs to have the judgment below affirmed.

In the case cited it was found as matter of fact as likewise found in this case that McAlley purchased the several lots which he conveyed to Biggs knowing of and relying upon the statements and representation contained in the booklets and advertisements issued by the Norton Point Land Company to attract purchasers, to the effect that a complete system of sewer and water and gas mains had been constructed at Sea Gate and that purchasers were to have the right to use the improvements introduced without any assessment, for the cost thereof. The conclusion resulting from that finding clearly appears in the opinion: " It is not seriously denied that the purchasers of lots, relying upon the printed advertisements and the map, acquired not only easements in the streets, the fee of which remained in the land company, but the

right to connect with the sewer and water systems. * * * Had the house connections been laid prior to the sale of the lands by the land company there could be no doubt whatever that the grantees would have acquired not only the usual easements of light, air and access in the streets, but the right to maintain said connections, which rights and easements would have been appurtenant to the land conveyed and passed to each successive grantee. (*Lampman* v. *Milks*, 21 N. Y. 505; *Curtiss* v. *Ayrault*, 47 N. Y. 73; *Fritz* v. *Tompkins*, 168 N. Y. 524, 532.) The lots were sold with reference to a uniform plan of improvement, and the representation that water and sewer systems had been completed, and purchasers of lots would not be assessed for the same, necessarily implied an agreement that such purchasers should have the right to make connections, and the case is the same as though the connections had already been made, and is in principle analogous to cases in which it is held that reciprocal rights and burdens are created by the sale of lots with reference to a map showing streets, or to a uniform plan of improvement. (*Tallmadge* v. *East River Bank*, 26 N. Y. 105; *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440; *Lord* v. *Atkins*, 138 N. Y. 184; *Thousand Island Park Association* v. *Tucker*, 173 N. Y. 203; *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of Mayor, etc., of New York*, id. 581.)

" The plaintiff (Biggs) acquired the rights appurtenant to the premises possessed by her grantor (McAlley), and, as she at least had the right to make connections at convenient points with the existing systems. * * *"

I am unable to reconcile the language thus employed with the conclusion in the prevailing opinion in this case that " the defendant Biggs is not entitled to an easement over the plaintiffs' land by reason of anything that occurred through the general advertisement of the property by the land company * * *. If the repre-

sentation was untrue it would not create an easement by implication or otherwise, but it was true so far as appears except perhaps to the extent that the association had failed to extend the sewer and water mains a few feet on to Beach Fiftieth street."

In the former case the court said: " But there can be no doubt that it was the purpose of the advertisements to give the purchasers to understand, and that they did understand, that they would have the right to connect with the sewer and water systems." Then follows the conclusion that had the connections been made before McAlley's purchase, an easement would have existed *appurtenant* to the land, to maintain the connections, and in view of the sale of the lots with reference to a uniform improvement and the representation that a sewer system had been completed made the case the same as though the connection had been made before the sale to McAlley.

The first deed to McAlley was a full covenant warranty deed. It was dated October 20th, 1897. The findings disclose: " At that time the sewer system had been constructed generally through the streets of Sea Gate, but no sewer or any lateral has ever been constructed at Beach Fiftieth street upon which street the Biggs property fronts.

" In February, 1901, the main trunk sewer of Sea Gate consisting of an eighteen inch pipe ran through Surf Avenue and emptied into the Bay at the end thereof under the pier which then existed there.

" That in the year 1901, and prior to June first, the Norton Point Land Company shifted the sewer pipe running through Surf Avenue to the Bay and turned it at right angles to Surf Avenue about eight feet from McAlley's northern line and ran it parallel with that line and *through its own land* westerly to the ocean.

" That said change was made by the Norton. Point

Land Company for its own benefit and for the *purpose of laying out and selling this part of its property.*

" That the result of such change was to bring the sewer outlet of the Sea Gate sewer system to six feet eight and three-fourths inches of McAlley's rear or northern line where it has since remained."

The findings quoted with the following facts and comments, I deem of importance. The change in the outlet was made nearly four years after McAlley's first purchase of three of the four lots and at a time when the lots were yet vacant property and did not require to be connected with a sewer system. When in February, 1901, the Norton Point Land Company conveyed by deed to the Sea Gate Association as mentioned in the prevailing opinion, Beach Fiftieth street, Surf avenue and the ocean front known as Beach Reservation together with the sewer pipes, etc., together with about one hundred lots, assuming that by such conveyance the fee of the streets, etc., was thereupon vested in the Sea Gate Association, McAlley as well as any other purchaser of lots who had acquired easements of light, air and access therein and the right appurtenant to their lots to make connection with sewers. Not only did that right exist, but it was recognized in the deed to the association as was likewise the right of the land company to provide another outlet for the Surf avenue sewer. The description of the property conveyed included the sewer pipes, etc., " and to have sewage and surface water discharged through *present outlets until suitable substitutes therefor shall be provided."* The right of the land company to provide suitable substitutes for present outlets of sewers was not confined to the land conveyed, but to any land owned by the land company. The deed also recognized that purchasers of lots already sold or thereafter to be sold by the land company were vested with certain rights which were to be expressly reserved, by the follow-

ing language contained in the deed: " Subject, *however,* to any *easements or rights* now existing in respect to any of the *same* (*i. e.,* streets, sewers, water or gas mains, outlets, etc.) *and* to any *easement or easements* in favor of any and all of the lands still remaining the property of the party of the first part (the land company) *and of any of the owners* or occupants of any of such land at any time of the same character and extent *as is appurtenant to like lands heretofore sold and conveyed by the party of the first part* " (the land company).

The deed in question did not include any part of the block of land embracing the lots sold to McAlley or the several blocks of land sold to the plaintiffs.   Both parties to the deed appreciated that not only remaining land unsold but as well land already sold was subject to and burdened with rights and easements appurtenant to the land for light, air and access in the streets, and the privilege of connecting with the sewer, gas and water systems.

The language of the deed also indicates that new outlets for sewers were to be substituted for some of the existing outlets and the findings are that the outlet of Surf avenue sewer was changed prior to June 1st, 1901, by the Norton Point Land Company shifting it from a point in Surf avenue directly opposite lot No. 1 running same across the length of that lot, Ocean avenue and through other lots a distance of over six hundred feet to the ocean; that the change was made to enable the land company to lay out and sell its property in that locality *and it has continued to be the outlet of the Surf avenue sewer since that time.*

Following the change of outlet of Surf avenue sewer made by the land company prior to June 1st, 1901, for the purposes stated, the land company continued the owner of the land northerly of the Biggs land.   On April 17th, 1906, the land company caused a survey to be made of some of said land upon which it laid out

in blocks and lots, the latter being numbered one to fifty-four inclusive and twenty-four A to fifty-four A inclusive. Such survey and platting is shown on the "Map of Sea Gate property of Norton Point Land Company . * * * Supplement E" (in the record), the same survey and map referred to in the deed from the land company to the plaintiffs.

The land company had five years before substituted for the original outlet of the Surf avenue sewer into the bay a new outlet across land owned by it extending from the junction of the old sewer in Surf avenue at right angles with the same northwesterly to the ocean, the course of same being about eight feet northerly of the Biggs lots. In November, 1906, the land company conveyed to the plaintiffs lots numbers 1 to 50 inclusive and 21A to 50A according to the survey of April 17, 1906, Supplement E, being all of the land shown thereon save eight or nine lots. The outlet at that time and for years had existed through lot number one. The deed was as stated subject to rights and easements and also contained a restriction which prohibited plaintiffs from erecting any building within ten feet of the line of the Biggs property. As lot number one was but twenty feet in width, it was thereby rendered useless as a lot for a building unless the unrestricted ten feet was utilized in connection with the lots adjoining it on the north. The restriction could serve but one purpose, viz., to prevent the erection of a building over the sewer outlet.

It is stated in the prevailing opinion that there exists in Surf avenue a sewer which can be reached from the Biggs property by a sixty-foot extension on Beach Fiftieth street. The record does not disclose any finding which justifies such conclusion and a basis for the suggestion cannot be found in the record. The course of the old sewer was *down* Surf avenue to the bay — the outlet of same being under the old dock. Assuming as

the opinion must, that after the shifting of the outlet in 1901 to the ocean some of the old sewer pipes remained in Surf avenue below the point where the new outlet was turned at right angles to Surf avenue, a sewer through Beach Fiftieth street striking the old pipe at Surf avenue would not drain into the new or substituted outlet unless it ran up grade a distance of over one hundred feet. If the extension suggested were attempted to be made with the view of discharging through the old outlet it would be useless as the outlet to the old sewer into the bay had not only been abandoned but rendered unavailable. To justify that statement I refer to the evidence of the witnesses called by the plaintiffs, which was in part the basis of the findings of the trial justice, that the old sewer pipes constituting the outlet under the old dock into the bay were taken up and hung upon the timbers of the old dock and some of them left in the sand and when the present outlet was installed it was the main outlet.

The proposition is contrary also to the findings that the sewer across lot number one was constructed by the land company over that property as a part of the sewer system with the result that the same has since remained as such. It seeks to minimize and defeat the rights and easements reserved in the deed to the Sea Gate Association which was of record nearly six years before the conveyance to plaintiffs.

The facts relating to the change made in the outlet were stated in the opinion in *Biggs* v. *Sea Gate Association,* and therein this court said: " So far as the *sewer* was concerned, the plaintiff (Biggs) has made the connection with an *existing outlet.*" To deny to the Biggs property a right to sewer into the existing outlet is to deprive Biggs of a vested right appurtenant to the land. It renders valueless and uninhabitable a property upon which Biggs expended nearly seventy thousand 'dollars.

It prevents Biggs connecting with the only outlet of the entire sewer system at Sea Gate. As the prevailing opinion refers to evidence in the record, I assume I may exercise the same privilege to justify that statement. A witness for the plaintiff testified that the existing outlet is the *only* outlet for the drainage of sewage. The sewers in all of the streets at Sea Gate drain into the main sewers in the larger streets and the main sewers into the outlet and that is the only sewage system existing in Sea Gate.

Lot number one, long before plaintiffs purchased the same, was burdened by the existing outlet for all of the sewage disposal at Sea Gate, and under the findings in this case and my view of the law as determined by this court in the former case.

My conclusions are that McAlley was entitled under his purchase as appurtenant to the land conveyed to him to connect said lots with any existing sewer system, and Biggs as his successor in title acquired the same right. That the sewer through lot number one being the outlet of the sewer system of Sea Gate, having been constructed by the land company as a part of the existing sewer system over land owned by it, said lot was burdened with and subject to the rights appurtenant to the Biggs lots to make connection therewith, and the plaintiffs took title to lot number one subject to the right to have the sewer maintained therein and of the adjoining owner, Biggs, to make sewer connection therewith.

I am adverse to overruling the decision of this court in *Biggs* v. *Sea Gate Association*, and for the reasons above stated and the views expressed in the opinions below, I vote for affirmance.

HISCOCK, Ch. J., McLAUGHLIN and ANDREWS, JJ., concur with CHASE, J.; HOGAN, J., reads dissenting opinion; POUND, J., absent; CRANE, J., not sitting.

Judgment accordingly.