NEW YORK DOCK COMPANY, Plaintiff, *v.* FLINN-O'ROURKE COMPANY, INC., and THE CITY OF NEW YORK, Defendants.

(Supreme Court, Kings Special Term, May, 1919.)

Condemnation proceedings — when lease of premises is waiver of damages — lands under water — easements — injunctions — Greater New York Charter, § 261.

Where a dock company's right of access to the sides of its piers over the waters of a ferry slip lying between, was not included in the condemnation proceedings instituted by the public service commission on behalf of the city of New York to acquire title to lands under water in the slip, etc., the dock company, by leasing from the city the lands under water in the slip and agreeing to construct a pier over the same, waives all claim to damages to right of access to its piers and all claim for rental damages from and after the date of the lease.

A contention that the lease, having been entered into upon the supposition that the dock company's easement of access to its piers had been taken by the city and that the dock company would recover compensation therefor, did not constitute a waiver of the right of access to the piers, held untenable on the ground that the mistake, if any, was one of law as to the proper construction of the description of the property to be condemned, and on the further ground that the dock company has in no way sought to rescind the lease but apparently desires to stand upon it and enjoy its benefits and at the same time recover fee damages on account of the occupation of the waters of the slip.

In an action by the dock company for an injunction to restrain the occupation of the slip for the construction and operation of a tunnel of the subway system, only the rental damages for the defendant's occupation of the slip until the date of said lease based upon plaintiff's right to use the waters of the slip for access to its piers in the condition in which the slip was at the commencement of such occupation are recoverable, and the evidence being insufficient to enable the court to determine the damage, an interlocutory judgment is granted and a reference ordered to ascertain the damage.

Section 261 of the Greater New York Charter relative to the filing of a claim with the comptroller before commencing action, and a notice of intention to sue within six months after the accrual of the cause of action, does not apply to the present action.

ACTION for an injunction.

Davies, Auerbach & Cornell (Charles E. Hotchkiss and Andrew Macrery, of counsel), for plaintiff.

Edward M. Grout and Paul Grout (Edward M. Grout, of counsel), for defendant Flinn-O'Rourke Company, Inc.

William P. Burr, corporation counsel (Charles V. Nellany, Frank R. Rubel and Louis C. White, assistants corporation counsel), for defendant City of New York.

BENEDICT, J.  This is an action for an injunction to restrain the defendants from occupying the slip at the foot of Montague street, Brooklyn, between two of plaintiff's piers for the construction and operation of the Whitehall Street-East River-Montague Street tunnel of the subway system now under construction by the city of New York under the direction of the public service commission of the first district.

There is no substantial dispute about the facts. The land under water in the slip at the foot of Montague street out to the pierhead line of 1873, except, perhaps, a narrow gore on the south side of the slip, formerly belonged to John J. Pierrepont and other members of the Pierrepont family. The plaintiff owned and still owns the land under water adjoining the Pierrepont property to the north and south. Upon these lands of the plaintiff are erected two piers, pier 14, on the north side of the slip, and pier 15, on

the south side thereof. The width of the slip between these two piers is about 122 feet at the bulkhead line and about 160 feet at the outer end. For over fifty years prior to July, 1912, the slip was occupied by the Wall Street ferry, and the ferry racks effectually prevented access to the south side of pier 14 and the north side of pier 15. The ferry was discontinued in July, 1912, and thereafter the racks were removed, so that from that time on until the erection of the dumping structure hereinafter mentioned plaintiff had access to the sides of its piers over the waters of the slip for craft whose size and draft was such as to enable them to navigate the somewhat shallow waters.

On December 9, 1914, the public service commission, the city of New York and the plaintiff entered into a stipulation whereby the city and the commission and the contractors for the construction of the tunnels were authorized to enter upon the lands under water and waters in the slip for the purpose of construction work. It was provided in substance that the stipulation should not be construed as an admission on the part of the city or the public service commission of any right or rights of the dock company in the premises therein described, or any right of compensation for the use or occupation thereof; nor should it be deemed a waiver of any right to compensation on the part of the dock company. The stipulation was to continue in force until the title to the said property should become vested in the city by condemnation or otherwise, and it was agreed that if the property should not be otherwise acquired or if " appropriate " condemnation proceedings in which the claim of the New York Dock Company might be determined should not be instituted prior to January 10, 1915, the permission should be *ipso facto* null and void, and all work of construction on the waters and lands described in the stipulation should cease.

About the time of the signing of this stipulation, the defendant . Flinn-O'Rourke Company, the contractor for the construction of the tunnel, went into possession of the slip and erected a, dumping plant there, which effectually shut off access to the north side of pier 15, and interfered with access to the south side of pier 14. It did not interfere with access to the ends or the sides of such piers away from the slip. This dumping plant remained in the slip until recently, and had not been wholly removed at the time of the trial of this action.

Condemnation proceedings were instituted in December, 1914, by the public service commission on behalf of the city to acquire title to lands under water in the slip together with uplands adjacent thereto and the lands under water between the pierhead line of 1873 and that of 1897, which lands, as described in the memorandum annexed to the amended petition, included all the lands under water in the slip belonging to the Pierreponts, and all lying between the parcels of land under water owned by the dock company. The notice of application for the appointment of commissioners and the memorandum annexed to the petition provided that such lands were to be acquired " in fee free of all liens and encumbrances," and after describing the property by metes and bounds, proceeded as follows: ·

" Together with all and singular the appurtenances thereof or in any wise appertaining thereto and any and all rights of wharfage, cranage, advantages or emoluments, if any, growing or accruing by or from said premises or any part thereof.

" Excepting and excluding therefrom, however, any and all estate or estates, rights, terms, privileges, franchises or easements now owned by The City of

13

New York or the State of New York in or to said premises or any part thereof."

The purpose for which the lands were required was also stated in the petition and in the memorandum annexed thereto.

The order appointing commissioners, dated February 1, 1915, struck out that portion of the description above quoted which excluded the estates, rights, easements, etc., of the city and the state. This was done, it would seem, on account of the objection raised by the dock company in its answer that it was not clear from the description whether it was intended to take the easements which it claimed of access to its piers over the waters of the slip. The memorandum annexed to the amended petition, subsequently filed, also omitted this exclusion clause. The dock company filed a claim for damages on account of the interference with its alleged right of access to its piers over the waters of the slip. Hearings were had before the commissioners. They made their report, dated January 29, 1917, in which they found as follows relative to the claim of the dock company: "The New York Dock Company, a corporation, filed a claim and offered testimony before us. Said New York Dock Company, however, failed to establish any property right in said Parcel No. 1, as laid down on the maps and described in the petition in this proceeding, and we therefore make no award to said Company."

The report of the commissioners was confirmed by order of this court dated March 15, 1917, and this order was affirmed by the Appellate Division and the Court of Appeals. *Matter of Public Service Commission* (*Montague St.*), 224 N. Y. 211.

In the meantime and on June 2, 1916, the commissioner of docks of the city of New York and the New

York Dock Company entered into an indenture whereby the commissioner leased to the dock company for a term of ten years from delivery of possession, renewable for three more terms of ten years each, the land and land under water acquired in said condemnation proceedings, described by metes and bounds, " Excepting and excluding from said transfer, however, and reserving from all of the above described premises a permanent and perpetual right or rights, rights of way and easement or easements and the appurtenances thereto for the construction, maintenance and operation of the Whitehall Street-East River-Montague Street Rapid Transit Railroad now in course of construction, free of interference and right of interference in, through, over and upon the land above described, including the right to equip and to permanently and perpetually maintain and operate said rapid transit railroad and the appurtenances thereto, * * *."

It was further provided that the dock company should, for the purpose of protecting the railroad, construct a modern pier over it at the foot of Montague street, according to plans to be approved by the department of docks and the public service commission. It was further provided that: " Pending the construction of such pier and pending the construction of any pier thereafter constructed in the place thereof, the land under water and the waters above said land hereinbefore described shall be used for no other purpose than the construction of such pier, or future pier, * * *."

Possession of the premises was not to be given to the lessee (the dock company) until the construction and equipment of the railroad should have been completed unless in the opinion of the public service commission possession could be sooner given without

interfering with such work, and it was provided that: "Up to the time of the delivery of possession to the Lessee the Commission or its contractor or contractors shall be entitled to exclusive possession of the property and each and every part thereof * * *."

On or about March 12, 1917, the dock company gave notice to the defendant Flinn-O'Rourke Company to vacate the slip at once, and this action was commenced on or about March 17, 1917, two days after the confirmation of the commissioners' report in the condemnation proceedings. It was brought originally only against the Flinn-O'Rourke Company, but the city of New York was subsequently made a party.

The rights claimed by the plaintiff in and over the waters in the slip over the lands acquired by the city in the condemnation proceeding are easements of access to its piers over public waters, similar in nature to the easements of light, air and access to abutting property over the land lying in a street. It is claimed that this easement of access includes the right to dredge the lands under water in the slip, so as to enable larger vessels to come up to the piers, notwithstanding that such lands belong to others than the owner of the piers. This right, however, seems to be doubtful. See *Consumers Coal & Ice Co.* v. *City of New York,* 181 App. Div. 388, 393 *et seq.* It is urged that this right of access was not taken in the condemnation proceedings, because the description was so worded as not to include it, and the Court of Appeals seems to sustain that position. The Court of Appeals based its conclusion largely upon that part of the description, above quoted, which excluded all rights of the city of New York and the state of New York, from which it was argued that the public right of navigation over the waters of the slip remained unaffected, and hence that no rights of the plaintiff

were taken in the proceeding. The Court of Appeals apparently overlooked, however, that part of the order of February 1, 1915, which struck out of the description the clause excluding the rights of the state and city. But the opinion contains other expressions, from which it may be inferred that even if it had been called to the court's attention that such clause was stricken out, the court would still have held that the rights of the plaintiff were not included since they were not particularly specified in the description. I shall, therefore, decide this case on the assumption that the rights which the plaintiff claims to have been invaded by the defendants were not included in the condemnation proceeding. These rights include, as the Court of Appeals held in the condemnation case, a right of access to the sides of its piers over the waters of the slip.

I think that the stipulation of December 9, 1914, did not affect the rights of either party, except only that it may have a bearing on whether the occupation of the slip was tortious or not. But by the agreement of June 2, 1916, whereby the plaintiff leased from the city the lands under water in the slip, and agreed to construct a pier over the same, I think the plaintiff waived all claim to fee damages and all claim to rental damages from and after the date of such agreement. That an abutting owner, by giving consent to the occupation of a street by an elevated railroad, or otherwise abandoning his easements of light, air and access, may waive his right to recover damages for injury to such easements, is settled by a number of cases. *White* v. *Manhattan R. Co.,* 139 N. Y. 19; *Foote* v. *Metropolitan Elev. R. Co.,* 147 id. 367; *Ward* v. *Metropolitan Elev. R. Co.,* 152 id. 39, 43; *Heimburg* v. *Manhattan R. Co.,* 162 id. 352. In the same way the right of access now claimed by plaintiff could have been, and in my

opinion was, waived by said agreement, the terms of which bearing upon this question have been above set forth.

It is urged on behalf of the plaintiff that this agreement does not constitute such a waiver because it was entered into under a mistake as to the scope of the condemnation proceedings, that is, upon the supposition that the easement of access had been taken by the city, and that it (the plaintiff) would receive compensation therefor. There are two answers to this contention. The mistake, if any there were, was a mistake of law, as to proper construction of the description of the property to be condemned. Secondly, plaintiff has not in any way sought to rescind the agreement, but apparently wishes to stand upon it and enjoy its benefits, and at the same time recover fee damages on account of the occupation of the waters of the slip.

The only damages, therefore, which can be recovered in this action are rental damages for the period from the commencement of defendants' occupation of the slip in December, 1914, until June 2, 1916, the date of the aforesaid lease. Such damages must be based upon the right to use the waters of the slip for access to plaintiff's piers in the condition in which the slip was at the commencement of such occupation, and without regard to what might have been earned had the slip been dredged. The nature of plaintiff's piers, and the extent to which they were rented to others, must also be taken into consideration, plaintiff being entitled to recover only its actual loss. There is no evidence in the case sufficient to enable the court to determine the amount of damage. The expert evidence is of no value because it was based upon the assumption that the slip would have been dredged out to a greater depth than it had in December, 1914, so

as to admit of docking ocean-going vessels therein.
And for the same reason the evidence of the rentals
received for the use of the south side of pier 15 is not
sufficient. I will not, however, dismiss the complaint,
but will grant an interlocutory judgment in accord-
ance with this opinion, and send the case to a referee
for proof of rental damages for the period above
mentioned.

If the judgment or any part thereof should be col-
lected from the defendant Flinn-O'Rourke Company,
that defendant will be entitled under its contract to
reimbursement from the city.

The contention of the city that section 261 of the
charter, relative to the filing of a claim with the comp-
troller before commencing action, and a notice of
intention to sue within six months after the accrual
of the cause of action, applies, cannot be sustained.
*Sammons* v. *City of Gloversville*, 175 N. Y. 346; *Pen-
field* v. *City of New York*, 115 App. Div. 502; *Flaxman*
v. *City of New York*, 98 Misc. Rep. 88.

Judgment accordingly.