BROOKLYN TRUST COMPANY, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

(Supreme Court, Kings Special Term, December, 1919.)

Trespass — action for — pleading — damages — injunctions — city of New York — evidence.

 In an action brought on the equity side of the court the first count of the complaint alleged that by reason of defendant's threatened trespass, subsequently carried out, to run a subway through plaintiff's land and under a street in the city of New York, plaintiff incurred additional expense for the foundation of its building, then in course of construction, in order to protect the building from anticipated injuries, which expense would not have been necessary but for the alleged trespass. A money judgment was demanded in the amount of such additional expense. *Held,* that if a cause of action at all was alleged, it was one at law and not in equity, and that said cause of action should be dismissed as a separate cause of action.

 The second count of the complaint, repeating all the allegations of the first count, sets forth a good cause of action in equity under the doctrine of the elevated railroad cases. *Held,* that as the trespass was a continuing one and the remedy at

38

law inadequate, the court in fixing the damages to be awarded in lieu of injunctive relief, might and should take into consideration all expenses necessarily incurred by plaintiff in protecting its adjacent property from injuries reasonably certain to result from the construction and operation of the subway.

The plaintiff was entitled to give evidence tending to show that deeper and stronger foundations than the original plans and contract called for, would be necessary to protect its building from injury resulting from the construction and operation of the subway, and the fact that plaintiff did not determine to improve its property and did not begin such improvement until after the laying out of the subway route through the street and in front and adjacent to plaintiff's premises did not preclude the consideration of the elements of damage above mentioned, and as it cannot be determined without hearing the evidence that plaintiff will not be entitled to substantial damages by reason of defendant's trespass, a motion to dismiss the complaint as to the second cause of action will be denied and the trial ordered to proceed.

Action for trespass.

Cullen & Dykman (Edward J. Byrne, of counsel), for plaintiff.

William P. Burr, corporation counsel (Charles V. Nellany, of counsel), for defendant.

Benedict, J.   This is an action brought on the equity side of the court to secure redress for defendant's alleged trespass upon the land of the plaintiff in Montague street in front of and adjacent to its premises at the northeasterly corner of Clinton and Montague streets, in the borough of Brooklyn, city of New York. The complaint contains two counts, the first of which sets forth in substance that plaintiff, by reason of the defendant's trespass, then threatened and subsequently carried out, incurred additional expense for the foundations of its building, then under construction, in order to protect the building from anticipated injuries, which

expense would not have been necessary but for the defendant's said trespass in running the subway through plaintiff's land under the street. The judgment demanded in connection with this cause of action is a money judgment for the amount of such additional expense. The second count is the usual one to enjoin the defendant's continuing trespass, or for damages in lieu of the injunction.

At the opening of the trial defendant moved to dismiss the complaint, upon which motion the court reserved decision, and the trial was thereupon suspended until the determination of the motion.

I think the first count of the complaint, if it states a cause of action at all, sets forth a cause of action at law, and not one in equity. If the plaintiff be entitled, on account of defendant's trespass, to recover as damages the cost of the measures taken by it to prevent threatened injuries to its building, there is no reason why it should not sue at law for the tort. I decide, therefore, that the first cause of action should be dismissed as a separate cause of action.

I think the second count, which repeats all the allegations of the first, sets forth a good cause of action in equity under the familiar doctrine of the elevated railroad cases, and that in fixing the damages to be awarded in lieu of injunctive relief the court may and should take into consideration all expenses necessarily incurred by plaintiff in protecting its remaining property from injuries reasonably certain to result from the construction and operation of the subway.

First as to the right to sue in equity. I think there is no question but that the remedy at law is inadequate. There is a continuing trespass, by reason of defendant's occupation with its structures of the plaintiff's land, and the trespass will be increased by the movement of trains through plaintiff's property when the

operation of the road is begun. The remedy at law for a trespass of this character would involve a multiplicity of suits, and under the elevated railroad cases the plaintiff is justified in suing in equity. See, besides the elevated railroad cases, *Heyman* v. *Biggs,* 223 N. Y. 118, 128. Doubtless plaintiff could maintain ejectment, even though the land lies in the street (*Carpenter* v. *Oswego & S. R. Co.,* 24 N. Y. 655; *Wager* v. *Troy Union R. R. Co.,* 25 id. 526, 534) ; but the remedy would be inadequate because the sheriff under the execution could not be required to remove the subway from plaintiff's land. *Hahl* v. *Sugo,* 169 N. Y. 109; *Baron* v. *Korn,* 127 id. 224, 228; *Blake* v. *McCarthy,* 115 N. Y. Supp. 1014.

Granting the right to sue in equity, what damages, if any, can plaintiff recover? It is well settled that the damages in an action of this nature are to be estimated according to the same rules which are applied in condemnation proceedings. The Court of Appeals, in a case arising out of the construction of the subway in Joralemon street, laid down the rule of damages as follows: " We think that the proper measure of damages is the full value of the fee taken, subject to the public easement of passage, and, both as to naked abutters and those who own the fee, the amount, measured in money, of the physical injuries inflicted and those which with reasonable certainty will be inflicted upon the abutting property by interference with lateral support through the proper construction and operation of the road, including the rental value of the premises during the period, if any, while they are actually untenantable." Vann, J., in *Matter of Rapid Transit R. R. Commrs.,* 197 N. Y. 81, 107.

In a case arising out of the Catskill aqueduct, the Appellate Division in the second department has stated the rule as follows: " The courts of this State have

laid down the rule that the principle upon which compensation is to be made to the owner of land taken by proceedings of this character is, *first,* that such owner is to receive the full value of the land taken; and, *second,* where only a part of the land is taken, a fair and adequate compensation for the injury to the residue sustained, or to be sustained, by the construction and operation of the particular work." Woodward, J., in *Matter of Bensel (Catskill Aqueduct)*, 151 App. Div. 451, 454.

It has also been recognized in numerous cases that expenses necessarily incurred or to be incurred by a property owner, part of whose lands are taken, in protecting his remaining property or in restoring it as nearly as possible to its former condition are to be taken into consideration in estimating the damages. For example, in *Monongahela Valley Traction Co. v. Windom,* 78 W. Va. 390, it was held that the cost of constructing a retaining wall, made necessary by the improvement, properly entered into the damages found by the jury.

The court said: " It is proper also to include in the award the expenses necessarily incurred or to be incurred by the owner, by reason of the improvement, to preserve the property not taken from further injury and render it fit for use and enjoyment.   *   *   *

"Ample and express authority for inclusion, in the damages awarded, of compensation for loss of lateral support of land adjoining that appropriated and the cost of necessary retaining walls to preserve the property will be found in 2 Lewis on Em. Dom. § 824; *Thompson v. Railway Co.,* 27 Wis. 93; *Mason v. Boston,* 163 Mass. 479."

At the time of the trial of that case, which was a condemnation proceeding, the retaining wall had not been built, but it appeared that it would be necessary.

In *Greenawalt* v. *West Newton Borough,* 64 Penn. Super. Ct. 576, the court, in assessing damages for a change of grade, held that it was proper to consider, not as an item of specific damage, but as an element affecting the market value of the property: '' The cost of preserving the property in the condition it was prior to the change of grade, or its restoration thereto,'' and that this included the cost of building a retaining wall.

It does not appear whether the wall had actually been built or not.

In *Chicago, Santa Fe & California Ry. Co.* v. *McGrew,* 104 Mo. 282, where plaintiff condemned a right of way through defendant's mining property, it was held that if a rearrangement of the mine and appliances used in operating the same would be rendered necessary, involving the abandonment of the existing shaft and the relocation of the engine house, etc., all these matters should be taken into consideration in estimating the damages.

In *Glendenning* v. *Stahley,* 173 Ind. 674, 682, it was held that where a road is opened up and part of a land owner's premises are taken therefor, the cost of building new fences is a matter to be taken into consideration in estimating damages. See, also, *Commissioners' Court* v. *Street,* 116 Ala. 28, 36.

In *Matter of City of New York (39th St. Ferry),* 143 App. Div. 515, part of a tract of land under water, occupied by claimant, a street railroad company, as a power house, was taken. It was claimed that the taking cut off access to one side of the power house where claimant had been receiving and had the right to receive coal from boats. It was held that the commissioners had overlooked some of the elements of damage which should have been taken into consideration. Woodward, J., said: '' Moreover, while we do not think

there is justification for believing that the power house will have to be abandoned, or that the machinery will necessarily go into the junk heap, we are of the opinion that the changes necessary to be made to give the defendant absolute control of its power plant, with rights of access and of an opportunity to perform all of its functions and operations upon its own premises, should be taken into account, to the end that the defendant shall be placed in the same relative position that it occupied when this proceeding was instituted. *  *  *

" If the destruction of the waterway is such as to deprive the defendant of the use of its property at its highest utility, then the damages resulting from the necessity of procuring another location and removing the buildings and machinery should be taken into view, to the end that the defendant shall not be called upon to contribute more than its just share to the use of the public."

In *Brainard* v. *State,* 74 Misc. Rep. 100, 107, 108, where property owners abutting on the Erie canal had a dock on the canal which was used in connection with their business, and which was included in part of their property taken for the new barge canal, it was held that in fixing the damages to the remainder the fact that the construction of a new dock would be expensive by reason of a sloping wall was a matter to be taken into consideration, and that the prospect of using and building a suitable dock should be taken into account, but it did not follow that the claimants were to be allowed the cost of construction of a new dock, and that they could not have the cost of a stone dock. See, also, *Masonic Assn.* v. *City of Chicago,* 215 Ill. 278; *East Side Levee & Sanitary District* v. *St. Louis, Iron Mtn. & So. Ry. Co.,* 280 id. 222; *Matter of Leroy Street,* 188 App. Div. 58; *Buell* v. *County of Worcester,* 119 Mass. 372.

All of these authorities make it clear that, had the defendant, prior to plaintiff's incurring additional expense for deeper and stronger foundations, sought to take by condemnation proceedings the land or the easement which it has since taken by force, the plaintiff would have been entitled to give evidence to show that deeper and stronger foundations than its original plans and contract called for would be necessary to protect its building from injury by reason of loss of lateral support resulting from the use to be made by the city of the property or easement taken, and to show the estimated additional cost of such foundations, and to have such additional expense considered in fixing the damages or compensation to be awarded to it. And I think that under its second cause of action in this suit the plaintiff is entitled to give like evidence, adapted, of course, to the somewhat different situation now existing. The evidence as to the necessity for deeper and stronger foundations will necessarily be opinion evidence, but such would have been the case if the question had been presented in condemnation proceedings brought under the circumstances above assumed. And we shall have now the advantage of knowing the exact cost of the increased foundations instead of having to rely on preliminary estimates, although, of course, the court must determine whether such cost is reasonable.

I will not, at this stage of the case, undertake to say that such additional expense may be recovered as an item of specific damage, although the Court of Appeals in the *Joralemon Street Case, supra,* seems to indicate that an award in such a case may include as an item of specific damage injuries resulting to premises from the use made of condemned property for a subway — where the loss of lateral support caused a settling of the buildings of abutting property owners — and not

that such injuries are to be merely considered in esti-
mating the difference in the value of the premises
before the taking and of the remainder after the taking.
Or it may be that the true rule of damages would be
the difference in the value of plaintiff's premises
before and after the taking, *or* the value of the land
actually taken together with the cost of preventing the
anticipated damage to the building, whichever amount
should be the lesser, in accordance with the rule laid
down in *Riley* v. *Continuous Rail Joint Co.,* 110 App.
Div. 787, 791; affd., 193 N. Y. 643, and *Hartshorn* v.
*Chaddock,* 135 id. 116, 122. But, whichever be the true
rule, plaintiff is at least entitled to have considered the
evidence of its damage by reason of the loss of lateral
support.

That the plaintiff after learning of the laying out of
the subway route through Montague street, and the
letting of a contract for the construction of the subway
therein, went ahead and incurred this additional
expense before there was any actual trespass upon its
property cannot, in my opinion, make any difference
as to its right to recover damages resulting from loss
of lateral support. If the court shall find upon the evi-
dence that the construction of the subway and its
operation would with reasonable certainty have
resulted in injury to plaintiff's building had the founda-
tions been constructed according to the original plans,
I think that the plaintiff is to be commended for its
forehandedness in doing what seemed to be necessary to
prevent the threatened damage, and should not be penal-
ized on the theory that it did not wait until the damage
had actually occurred, when, in all probability, the cost
of repairing it would have been much greater than the
cost of prevention has been. At the time when the
additional expense was incurred the trespass was
threatened, not by any mere private threat, but by such

public and official acts as the laying out of the subway route by the proper authorities and the letting of the contract for the construction of the tunnel and road, and subsequently and before the commencement of this action the threatened trespass was actually committed, and still continues. In *Chicago, Santa Fe & California R. Co.* v. *McGrew, supra,* the court said: '' It is the duty of one, sustaining damages by reason of the act of another, to use all reasonable exertion to protect himself and avert, as far as practicable, the injurious consequences of such act. [Citing authorities.] It was, therefore, the defendant's duty to adjust his property to its changed condition as soon as it could reasonably be done, and in such manner as would avert such damages as could be avoided by reasonable endeavors and expense.'' 104 Mo. 291. The same doctrine seems to be recognized, although less explicitly, in *Hartshorn* v. *Chaddock, supra.* See *Buell* v. *County of Worcester, supra.*

The fact that plaintiff did not determine to improve its property and did not begin such improvement until after the laying out of the subway route through Montague street does not preclude the consideration of the elements of damage above mentioned. *Shepard* v. *Metropolitan El. R. Co.,* 48 App. Div. 452, 458; affd., 169 N. Y. 160; *Storm* v. *New York El. R. R. Co.,* 82 Hun, 11, 13.

It is urged that plaintiff owns only an undivided two-ninths of the fee of Montague street in front of its premises. The complaint does not so state, nor was any formal admission to that effect made on the record. The complaint alleges full ownership by the plaintiff of premises running from the center of Montague street to the center of Pierrepont street, and I must determine this motion upon the facts alleged. If it should appear on the trial that

plaintiff owns only two-ninths of the fee of the street, this may have an important bearing on the amount of damages, if any, to be awarded. It will also raise the question whether or not the owner or owners of the other undivided seven-ninths should not be brought in as parties to this action, so that defendant on paying the damages, if any, which may be awarded in lieu of injunctive relief, may acquire a clear right to maintain and operate the subway through the land in the street in front of plaintiff's premises.

These considerations lead to the conclusion that it cannot be determined without hearing the evidence that plaintiff will not be entitled to substantial damages by reason of defendant's trespass, and hence the trial must proceed.

Motion to dismiss the complaint granted as to the first cause of action, with an exception to the plaintiff, and without prejudice to the proof of the facts therein alleged under the second cause of action. Motion to dismiss the complaint denied as to the second cause of action, with exception to defendant.

No order need be entered hereon, but the disposition of the motion will be entered on the stenographer's minutes, with exceptions as aforesaid. The trial will proceed before me at a continuation of the December Special Term, Part III, to be held in the court room of the Trial Term, Part VI, in the Kings county court house on January 8, 1920. The stenographer's minutes of the former hearing should be obtained and submitted to me at the adjourned hearing.

Ordered accordingly.