BROOKLYN TRUST COMPANY, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

Second Department, November 25, 1921.

Municipal corporations — streets — abutting owners — action for injunction and damages for trespass caused by construction of subway interfering with lateral support — action properly in equity — consent by prior owner to construction of subway not bar to action — finding that plaintiff was compelled to construct foundation of building deeper because of construction of subway supported by evidence — plaintiff had right to protect building by constructing foundation deeper than necessary if subway had not been built — not necessary to join as parties all plaintiff's tenants in common having title to fee of same street — allowance for extra expense of underpinning adjoining building proper.

The plaintiff corporation brought this action in equity to restrain a continuing trespass, or for damages in the alternative. It appears that the plaintiff having purchased premises at the northeasterly corner of Clinton and Montague streets, in the borough of Brooklyn, New York city, entered into a contract for the construction of a building thereon; that subsequently the defendant entered into a contract for the construction of a subway opposite and adjacent to plaintiff's building, seventy feet below the grade of the street; that the depth of the foundation for the erection of plaintiff's building, as provided in its contract for construction, was twenty feet, ten inches below the grade, which was sufficient for the support of plaintiff's building if the lateral support of the street was not impaired; that the Public Service Commission refused to underpin plaintiff's building; that to properly protect plaintiff's building it was necessary to underpin it or carry the foundation to a greater depth than

that provided by the original plans; that plaintiff modified its plans and carried its foundation to a depth of sixty-five feet, ten inches, which was necessary and proper for the safety of plaintiff's building and that had such foundations not been carried to that depth, the building would have settled and cracked.

*Held*, that the action was properly brought in equity and that the court had the right to continue and assess the damages arising out of the trespass on the theory of avoiding a multiplicity of suits.

Assuming that the consent of the prior owner of plaintiff's property to the construction of the subway is binding on the plaintiff, still the real gravamen of plaintiff's complaint is that, being an abutting owner, the defendant interfered with the lateral support to which it was entitled, and the plaintiff is, therefore, entitled to recover for the physical injuries inflicted, and those which with reasonable certainty will be inflicted upon it by defendant's interference with its right to lateral support.

The finding by the court that it was necessary for the plaintiff to construct its foundation to a depth of sixty-five feet, ten inches in order to avoid damage to its building by the construction of the subway is amply supported by the evidence.

The plaintiff was not required to construct its foundation to the depth it had originally planned, and then wait until its building had actually settled and cracked before taking measures for its protection, but it had the right and it was its duty to protect its building from the threatened trespass which would entail serious damages as a consequence and to avert as far as possible the threatened damage.

It was not error for the court to refuse to reopen the case for the purpose of permitting an amendment to defendant's answer setting up that all parties, plaintiff's tenants in common, having title to the fee of Montague street, were not joined as parties plaintiff or defendant, for the action is not one purely to enjoin a trespass but includes as incident to the equitable relief asked for a claim for damages for interference with lateral support through the construction of the subway, and the ground upon which plaintiff claims it is entitled to damages is not alone that it owns the fee of the street, but that it owns the lands abutting on the street.

The allowance of the item for underpinning the wall of an adjoining building was proper, since under the Building Code the plaintiff was bound to protect the adjoining wall in the construction of its building, but in doing so the fact that the plaintiff was required to dig its foundation to a greater depth than originally planned made the operation more expensive.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme ·Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on or about the 5th day of May, 1920, upon the decision of the court rendered after a trial at the Kings Special Term, and also from an order, entered in said clerk's office on or about

the 19th day of April, 1920, denying defendant's motion to amend its amended answer.

*Willard S. Allen* [*John P. O'Brien, Corporation Counsel, John F. O'Brien, Charles V. Nellany* and *Daniel F. McMahon* with him on the brief], for the appellant.

*Edward J. Byrne,* for the respondent.

RICH, J.:

Two causes of action were alleged — the first being in substance that by reason of defendant's alleged trespass upon its land in Montague street, adjacent to its building at the corner of Clinton and Montague streets, by the construction of a subway railroad, plaintiff was obliged to incur greater and additional expense in the construction of foundations for its building, in order to protect it from injuries which were anticipated in the event defendant carried out its threat to construct said railroad, which expense would not have been necessary but for such trespass.  The judgment demanded is for money damages to the amount of such additional expenses.  The second cause of action realleges the first, and the prayer is for an injunction to restrain the continued trespass, or for damages in the alternative.

At the opening of the trial the learned trial court dismissed the first cause of action on the ground that, if it stated a cause of action at all, it set forth a cause of action at law and not one in equity, and held that the second cause of action alleged a good cause of action in equity under the familiar doctrine of the elevated railroad cases, and that in fixing damages to be awarded in lieu of injunctive relief, the court could take into consideration all expenses necessarily incurred by plaintiff in protecting its remaining property from injuries reasonably certain to result from the construction and operation of the subway.*

The learned court has found that plaintiff, the owner of seventeen-eightieths of the northerly one-half of Montague street and the easterly one-half of Clinton street, on or about December 14, 1913, having purchased the premises at the northeasterly corner of Clinton and Montague streets, entered

---

*See 109 Misc. Rep. 595.— [REP.

into a contract for the construction of a building thereon for
its banking house, and on or about October 9, 1914, the
defendant by the Public Service Commission entered into a
contract for the construction of a subway railroad, as alleged
in paragraph 5 of the complaint; that the subway was
since constructed, opposite and adjacent to plaintiff's build-
ing, seventy feet below the grade of Montague street, while
the depth of the foundation for the erection of plaintiff's
building, as provided for in its contract with Marc Eidlitz
& Son, was twenty feet, ten inches below the grade of Mon-
tague street, which was entirely sufficient for the support of
plaintiff's building, if the lateral support of the street was not
impaired. It was further found that plaintiff's attorneys
appeared before the Public Service Commission and protested
that the requirements of the proposed contract for the con-
struction of the subway were insufficient for the protection
and safety of plaintiff's building, and demanded that the
front wall of the building on Montague street and the side
wall on Clinton street for such distance as might be necessary
be underpinned, which request and demand was refused and
the only provision made in the contract which was executed
was for the underpinning of buildings of seven stories or
more in height, which were named, but of which plaintiff's
building was not one. That to properly protect plaintiff's
building it was necessary to underpin it or carry the founda-
tions to a greater depth than as provided by its original plans,
and upon the refusal of the Public Service Commission to
modify its contract, plaintiff modified its plans for the con-
struction of its building, and carried its foundations to a
depth of sixty-five feet, ten inches, which was necessary and
proper for the safety of plaintiff's building, and for which
plaintiff paid the sum of $23,768, which was the reasonable
value thereof. It was further found that had such foundations
not been carried to that depth, the building would have
settled and cracked, to repair such injuries might have cost
a sum far in excess of that expended, and it was a reasonable
exercise of judgment on the part of plaintiff to go to the
expense incurred. The court also found that the defendant
and its contractors entered into Montague street, and com-
menced the construction of the subway, which action con-

stitutes a continuing trespass, for which plaintiff has no adequate remedy at law, and the evidence is sufficient to support each of these findings.

It is urged under appellant's first point that the plaintiff is not claiming under its second cause of action any loss of lateral support under the doctrine of *Matter of Rapid Transit R. R. Comrs.* (197 N. Y. 81), and there being merely a trespass upon plaintiff's land beneath the surface of Montague street, and no injury claimed, nor damages asked for loss of any easement of light, air or access or loss of lateral support, there can only be nominal damages, and injunctive relief should be refused. The complaint alleges what in effect is a loss of lateral support, and the trial court has found facts which substantially establish that the defendant's act in sinking its subway to a depth of seventy feet below the grade of Montague street resulted in such a loss of lateral support that the plaintiff was obliged to change its plans for the construction of its foundation from twenty feet, ten inches, to sixty-five feet, ten inches, as a result of which it suffered additional expense and damage to the extent of $23,768. The plaintiff is properly in equity by reason of the continuing trespass to its property by the defendant, and, once properly in equity, the court has the right to continue and assess the damages arising out of the trespass, on the theory of avoiding a multiplicity of suits. (*Heyman* v. *Biggs*, 223 N. Y. 118, 128.) I am of the opinion, therefore, that the amended complaint states a good cause of action, of which a court of equity had jurisdiction.

It seems that the land abutting on Montague street upon which plaintiff's building is erected was owned on August 16, 1912, by the Brooklyn City Safe Deposit Company, whose consent in writing to the construction and operation of a rapid transit railroad according to the route or plan of construction therein referred to, was recorded in the office of the register of the county of Kings on December 29, 1913. Plaintiff acquired title to its land from the Brooklyn City Safe Deposit Company on March 31, 1914, and it is urged in appellant's second point that this consent is binding upon plaintiff and a bar to this action. In support of this contention, appellant cites *Heimburg* v. *Manhattan R. Co.* (162

Second Department, November, 1921.     [Vol. 198

N. Y. 352, 355) and *New York Dock Co.* v. *Flinn-O'Rourke Co., Inc.* (107 Misc. Rep. 190, 197), the first of which holds that a *mere abutter* having executed a consent to the construction of a railway in front of his property, this is a complete answer to a suit in equity in his behalf or *in behalf of* his grantee to restrain the operation of the road. It appears, however, that at the time of the execution of this consent the title to the street was in the estate of Henry E. Pierrepont, from which plaintiff subsequently acquired what title it has to the street in front of and adjacent to its premises. The court at Special Term held that the damages in an action of this nature ought to be estimated according to the same rules applied in condemnation proceedings. In *Matter of Rapid Transit R. R. Comrs.* [*Joralemon Street Subway Cases*] (197 N. Y. 107, 108), Judge VANN, speaking for the court, says: "We think that the proper measure of damages is the full value of the fee taken, subject to the public easement of passage, and, both as to naked abutters and those who own the fee, the amount, measured in money, of the physical injuries inflicted and those which with reasonable certainty will be inflicted upon the abutting *property by interference with lateral support* through the proper construction and operation of the road, including the rental value of the premises during the period, if any, while they are actually untenantable." The court in the same case also held that the ground upon which an abutter is entitled to damages for the physical impairment of his property in a case like this, is not that *he owns the fee* of the street, but owns land *abutting* on the street. The fee is of slight value, said the court, and of no value whatever except to support a theory leading to injustice, for the proximity of his land to the street is what gives value to the abutter's property. (*Matter of Rapid Transit R. R. Comrs., supra,* 103.) Hence, assuming the consent to be binding upon plaintiff, still the real gravamen of its complaint is that, being an abutting owner, the defendant interfered with the lateral support to which it was entitled, and the plaintiff is, therefore, entitled to recover for the physical injuries inflicted, and those which with reasonable certainty will be inflicted upon it by defendant's interference with its right to lateral support.

Appellant urges that the plaintiff failed to make out a

case entitling it to such damages.  In other words, the claim seems to be that it was unnecessary to construct the plaintiff's foundation to the depth of sixty-five feet, ten inches, but a careful reading of the evidence leaves no doubt that the finding by the learned trial court to the contrary is supported by the evidence.

It is further urged that anticipatory damages are not recoverable.  It seems to me to be the duty of one whose property is threatened with trespass, and especially when the threatened trespass is carried out and 'when the threatened trespass will entail serious damages as a consequence, to use all reasonable care to protect himself and to avert as far as possible the threatened damage.  The plaintiff was not required to construct its foundations to the depth it had originally planned, and then wait until its building had actually cracked and settled, or tumbled into the subway excavation, before taking measures for its protection.

It is claimed that the court erred in refusing to reopen the case for the purpose of permitting an amendment to defendant's answer, setting up that all parties plaintiff's tenants in common, having title to the fee of Montague street, are not joined as parties plaintiff or defendant.  It is urged that the defect of parties in an action of trespass is fatal to its maintenance.  (*Eckerson* v. *Village of Haverstraw*, 6 App. Div. 102; affd., 162 N. Y. 652.)  In that case the court held that tenants in common must join in actions to recover damages for trespass on lands, and if all are not made parties the defect is fatal.  That action was brought by the grantees of the owner of a farm who had subsequently filed a map setting it out in lots, blocks and streets, and the subject-matter of the controversy was as to who was the owner of a strip of land known as Rockland street.  The court at Special Term had dismissed the complaint, not only upon the ground that the street was a *highway*, but on the ground that certain cotenants of the plaintiffs in the ownership of the fee who were necessary parties had not been made such.  That action was purely one to enjoin a trespass.  It did not include the added feature as incident to the equitable relief asked for, of a claim for damages for interference with lateral support through the construction of a subway railroad.  In other words, the

Second Department, November, 1921.          [Vol. 198

ground upon which plaintiff in the instant case claims it is entitled to damages, is not alone that it owns the fee of the street, but owns the land abutting on the street.   I agree with the court at Special Term that, even though the amendment had been granted and the new parties brought in, the result would be no different so far as the plaintiff's rights are concerned.

The allowance of the item for underpinning the westerly wall of the People's Trust Company building was proper. The plaintiff under the Building Code (§ .22; now § 230) was bound to protect the adjoining wall of the People's Trust Company building, but it appears that the work necessary to protect the adjoining building was much greater in consequence of the fact that plaintiff was required to sink its foundation to a depth of sixty-five feet than in the case of a twenty-foot foundation.

It follows that the judgment and order must be affirmed, with costs.

Present — BLACKMAR, P. J., RICH, PUTNAM, KELLY and JAYCOX, JJ.

Judgment and order unanimously affirmed, with costs.