A. I. NAMM & SON, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, Kings County, June 9, 1938.

*Englander & Englander*, for the plaintiff.

*William C. Chanler, Corporation Counsel*, for the defendant.

FROESSEL, J. Plaintiff owns the property known as 217–221 Schermerhorn street, Brooklyn, N. Y. It is merely an abutting owner, having no title to any of the bed of the street. The action is for damages alleged to have been sustained " by reason of the defendant's acts in trespassing upon * * * and interfering with and removing the lateral support of plaintiff's said property." The facts are virtually undisputed.

Between July and September, 1929, the city completed excavation for subway construction in front of plaintiff's premises. Shortly prior thereto, and between May 25 and June 22, 1929, the city underpinned, at a cost to it of $2,200, the three existing structures on plaintiff's property, without any injury thereto. As a matter of fact, no negligence of any kind is claimed by the plaintiff. The side walls and roof of the subway structure at that location were erected in September, 1930. The construction work, including back filling and restoration of the sidewalk in front of plaintiff's premises, was completed during the summer of 1931. On October 31, 1930, the parties entered into an agreement, which was subsequently modified on December 19, 1930. It provided for stairway rights to the subway station through plaintiff's property, gave plaintiff show window space upon the mezzanine floor of the station, and required the city to construct and maintain said stairway, approach and inclosing walls, and to relocate an existing sewer, at its own expense.

About a year later, and fourteen months after the subway wall was completed in front of plaintiff's premises, namely, on November 13, 1931, plaintiff filed plans for the erection of a five-story and basement building on its premises which, of course, involved the demolition of the three old structures. These plans were disapproved by the building department of the city of New York on November 23, 1931. Thereupon amended plans were filed which called for the carrying of the proposed foundation piers down to thirty-two feet below grade. Were it not for defendant's subway structure theretofore completed, it would only have been necessary for plaintiff to sink these piers to a depth of twenty-one feet. The difference involved an agreed cost of $2,500. These amended plans were approved on or about November 27, 1931, and in December, 1931, foundations according to the amended plans were laid. A one-story building was erected surrounding the stairway, but the contemplated five-story and basement building was never constructed.

Plaintiff claims that the construction of the foundations for this additional depth of eleven feet " was necessary and required for the safety of *plaintiff's building* and defendant's structure " (Complaint, ¶ 12), and that it should be reimbursed the additional cost. In connection with the construction of defendant's subway, condemnation proceedings were instituted, and plaintiff there asserted its claim, which was disallowed, but without prejudice; hence this action. The question now presented is whether plaintiff has a cause of action for trespass and loss of lateral support by reason of these facts. It is conceded that there was no direct physical trespass upon plaintiff's property, and the claim is rather one for alleged loss of lateral support.

The natural right of every owner of land to have *it* laterally supported by the soil of his neighbor is a servitude, rather than a common-law easement, though the latter expression is commonly employed. This servitude arises *ex jure naturæ* and requires no act or convention of the parties for its creation. When this privilege is created by agreement or conduct of the parties, it is referred to as an easement. When regulated by statute, servitudes of this character come into being by operation of law. (1 Reeves on Real Property, 214, 278.) The principle was probably borrowed from the civil law. (*Humphries* v. *Brogden*, 12 Q. B. [N. S.] 739, 755; Dig. lib. X, tit. I, fin. reg. 13; Code Civil, art. 674.) At common law this natural right does not extend to buildings or artificial structures erected on the land. (1 R. C. L. p. 381; *Dorrity* v. *Rapp*, 72 N. Y. 307, 309; *Booth* v. *Rome, W. & O. R. R. Co.*, 140 id. 267, 275.) Any damage in such case is ordinarily *damnum absque injuria.*

In the instant case plaintiff does not claim that there was any actual disturbance of its land in its natural state, nor does it claim any agreement between the parties. It must, therefore, rest its cause of action upon some statute or rule of law. In the city of New York, as well as in other cities of the State, we find local ordinances creating rights and obligations of adjoining landowners in respect to excavations. (New York Code of Ordinances, chap. 5, art. 12, § 230.) But plaintiff contends that the ordinance does not apply for two reasons. *First*, because it relates only to adjacent property under private ownership. The correctness of this contention, under the present ordinance, has been denied. (*Croce* v. *City of New York*, N. Y. L. J. April 23, 1936, p. 2071, CONWAY, J.) Moreover, in every other respect, plaintiff contends the city should be treated as a private owner, because the building of a subway is proprietary in character. *Second*, because " the Code does not require plaintiff to bring down the foundations on its own land and permanently support its own building." Here it may be observed that the superintendent of buildings of the borough of Brooklyn has ample power to prescribe such requirement to secure " public safety " as well as the safety of plaintiff's building (Complaint, ¶ 12), wholly irrespective of any question of lateral support. (See Greater New York Charter, tit. 2, chap. IX, particularly § 411.) The city, on the other hand, maintains that the Building Code imposes upon it the obligation of supporting adjoining land and existing structures on private property abutting on a subway, and when that support is furnished, the city's obligation has been fully performed.

In any event, according to plaintiff's contention, which is, therefore, unsupported by common law or statute, it simply rests its claim upon a number of cases immediately hereafter referred to, of which *Matter of Rapid Transit R. R. Comrs.* (197 N. Y. 81) is one. That case held that an abutting owner was entitled to protection against the settling of his soil and the consequent physical injuries to existing buildings on the abutting lots, caused by the construction of a subway, and that is all it determined in that regard. Future improvements were in nowise involved. In the case of *Evelyn Building Corp.* v. *City of New York* (257 N. Y. 501) plaintiff sought an injunction to restrain a continuing trespass upon its real property, to compel its restoration, and for damages. There a rock slide occurred which precipitated practically the entire front part of plaintiff's premises for a distance of 130 feet into an excavation caused by reason of defendant's removal of lateral support in digging sixty feet to construct a subway. Without plaintiff's consent the city then erected eight concrete buttresses on said property. There

was a direct trespass and a serious actual property injury. In *Susswein* v. *Bradley Contracting Co.* (184 App. Div. 852) defendant caused plaintiff's existing buildings to move into the street, the walls thereof to crack, and again caused direct physical injury to plaintiff's property. In *Realty Associates* v. *City of New York* (184 App. Div. 902) the removal of the soil in the street caused the plaintiff's existing building to subside and crack, and to be otherwise injured, likewise constituting a direct physical injury and an actual damage in the sum of $5,000. In *Brooklyn Trust Co.* v. *City of New York* (198 App. Div. 595; affd., 234 N. Y. 520) the plaintiff was part owner of the fee of the bed of the street. It had entered into a definite contract for the construction of a building on its abutting property on December 14, 1913. Nearly a year later and on or about October 9, 1914, the defendant entered into a contract for the construction of a subway railroad. The plaintiff thereupon promptly protested, before the subway contract was awarded, and requested that provision be then made to support the building for which it had contracted the preceding year. The court found that there was a continuing trespass on plaintiff's fee, and the defendant's acts compelled plaintiff to change its *existing* plans and contract. No such situation is presented here.

*Matter of City of New York* (*New Street*) (215 N. Y. 109) and *Shepard* v. *Metropolitan Elevated R. Co.* (48 App. Div. 452) in no wise sustain plaintiff's views. In the former case the court expressly held that damages which might result from the future construction of a subway railroad were properly disregarded; in the latter case the defendants (an elevated railroad) were trespassers.

*Matter of Culver Contracting Corp.* v. *Humphrey* (241 App. Div. 825; affd., 268 N. Y. 26) simply decided that a condemnation court had no jurisdiction to make an award for physical damage to property not acquired or extinguished in a proceeding under the Rapid Transit Act, thus distinguishing *Matter of Rapid Transit R. R. Comrs.* (*supra*). It also added that " loss of lateral support is not a natural and probable consequence of the use, as limited by the petition, to which the property is to be put, that is, as a rapid transit railroad; *nor is it necessarily a result of the construction of a subway.*" (268 N. Y. 26, at p. 37.)

*Matter of Board of Transportation* (248 App. Div. 775) clearly refutes plaintiff's contention. There the city acquired a permanent easement under the surface of plaintiff's own land, and in such acquisition imposed an express condition that building operations on said property were subject to the approval of the chief engineer of the board of transportation. Nothing could be erected on plaintiff's property without such consent, and for this express

imposition affecting the whole upper stratum of plaintiff's property, as well as its title, the Appellate Division allowed additional damages of $7,500. But the court also held that " the item for damages alleged to be sustained by reason of additional expense for foundations in the event of the erection of a twelve-story structure, was properly disallowed, as the proposal for such a structure was based upon speculation and conjecture." This is in accord with authority (*Tallman* v. *Metropolitan Elevated R. R. Co.*, 121 N. Y. 119; *Matter of City of New York*, 197 App. Div. 431), and clearly sustains the contention of the city in this case.

Thus, in every case cited by plaintiff, the damages sued for were in connection with existing buildings or improvements, or structures in the course of erection, and where negligence, a physical trespass or an actual taking of plaintiff's property was involved. Plaintiff fails to cite a single authority to sustain its claim that additional expenses, of the character sued for in this case, are recoverable in connection with any future improvements, following the completion of a subway, on the basis of the doctrine of lateral support, unsupported by negligence or trespass, and there is no warrant in law to extend that doctrine to the present situation. Here, more than seven years have transpired since these large foundations were laid, and the proposed building has not even been erected, and it may never be.

It is not altogether clear from an examination of the authorities in this State how the common-law doctrine of lateral support came to be modified with respect to abutting owners on highways. CULLEN, Ch. J., thought the right rested on the statute of 1855 (Chap. 6), the predecessor of the present New York city ordinance; VANN, J., thought otherwise. (*Matter of Rapid Transit R. R. Comrs.*, *supra*, at pp. 100, 111.) It has been said that the qualification is a sequence of the proposition that by building on his land the owner does not forfeit his right to have his soil supported, at least if the lateral pressure is not increased by his own building. (50 A. L. R. 491.) But at least in this State, the doctrine has not yet been extended to contemplated multiple story buildings that might be erected in the future on the very boundary line of one's property, the weight and position and lateral pressure of which must seriously affect the property of the adjoining owner in a highway. The maxim *sic utere tuo ut alienum non lædas* has practical meaning. Any adjustment of the rights of two adjoining land-owners necessarily involves to some extent a restriction of the right of one of them. The city having built first, it had to support plaintiff's land and underpin its existing buildings. When plaintiff builds thereafter it may, in the interest of public safety and the

safety of its own building, be obliged to incur some additional expense in the way of deeper foundations, but it is in turn saved the expense of supporting the city's land in the public highway (*Village of Haverstraw* v. *Eckerson,* 192 N. Y. 54; *New York Steam Co.* v. *Foundation Co.,* 195 id. 43) and the city's subway wall (New York Code of Ordinances, chap. 5, art. 12, § 230). To allow plaintiff to succeed here would permit every abutting owner along the many miles of subway lines in this city, at any time after completion of a subway, to file plans for " contemplated " structures that may never be built, and subject the city to liability in damages running into millions of dollars. It would not be in accord with the law. So it has been determined in the trial courts (*Feer Realty Corp.* v. *City of New York,* N. Y. L. J. July 3, 1937, p. 36; *Van Cortlandt Properties, Inc.,* v. *City of New York,* Id. Feb. 18, 1938, p. 848), and by the reasoning in *Sherover Construction Corp.* v. *City of New York* (162 Misc. 893), and by the Appellate Division of this Department in *Matter of Board of Transportation* (248 App. Div. 775), and our Court of Appeals has not expressed itself to the contrary. (*Matter of Culver Contracting Corp.* v. *Humphrey, supra.*)

Accordingly, I grant judgment to the defendant and dismiss the plaintiff's complaint upon the merits.